*In re* J. STIRLING MORTIMER *et al.*, Petitioners-Appellees.—(THE BOARD OF COMMISSIONERS OF COOK COUNTY, Respondent-Appellant.)

First District (3rd Division)    No. 61230

Opinion filed December 3, 1976.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Henry A. Hauser, and William E. Kenney, Assistant State's Attorneys, of counsel), for appellant.

Mortimer & Hoffman, of Chicago (J. Stirling Mortimer, *pro se,* of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The State's Attorney and the Board of Commissioners of Cook County (hereinafter the County of Cook) appeal from an order directing the Board to pay attorneys' fees to Mr. J. Stirling Mortimer and Mr. Paul Hoffman (hereinafter the petitioners). Petitioners had asked the court for these fees as payment for their services as amici curiae.

On February 22, 1973, petitioners sought leave to intervene in the circuit court case which had arisen out of actions of certain policemen during what has become known as the Black Panther raid. The then presiding judge of the criminal division of the circuit court had appointed Mr. Barnabas Sears as special prosecutor in the case. Petitioners sought to intervene alleging that they were concerned taxpayers opposed to any further fees or costs being paid to the special prosecutor or to his

associates. Petitioners alleged that the special prosecutor's conduct in connection with the special grand jury raised "serious questions of misfeasance and nonfeasance" on his part. Their petition, presented to the then presiding judge, contained a series of examples which allegedly illustrated petitioners' cause for concern. The judge declined to rule on the petition at that time and took it under consideration.

On April 18, 1973, the judge filed a lengthy order calling for a hearing to secure and consider extrinsic evidence to determine whether the special prosecutor's conduct was contemptuous and tended to interfere with the administration of justice. The judge stated that he had not ruled on the petition to intervene and that it remained pending as part of his order. The judge instead appointed petitioners as amici curiae to make an investigation, conduct a hearing, and to draft a rule to show cause why the special prosecutor and his assistants should not be held in contempt of court for their actions in the case. Motions filed by the special prosecutor and his counsel to vacate the order were denied by the judge. Subsequent motions filed in the Illinois Supreme Court for leave to file original proceedings for writs of mandamus and prohibition subsequently were denied.

On March 20, 1974, petitioners filed a motion for fees for their services to the court as amici curiae. The County of Cook opposed this petition and, in support of its position, filed a motion to dismiss the petition for fees.

In connection with its motion to dismiss, the County of Cook filed a brief containing a statement of facts outlining the petitioners' prior involvement in the case. On July 22, 1972, petitioners had filed a taxpayers' complaint in the law division of the circuit court asking that the Board of County Commissioners be enjoined from making further payments to the special prosecutor. The complaint alleged that the court was statutorily prohibited from paying fees to the special prosecutor in excess of the salary of the State's Attorney. The special prosecutor moved to dismiss the complaint. On September 19, 1972, Judge Edward Egan dismissed the complaint, directing that no further pleadings be filed without prior leave of court. On October 26, 1972, petitioners sought leave to file an amended complaint alleging that the special prosecutor had "acted illegally" in proceedings before the special grand jury and should therefore not be compensated for any services rendered. Judge Robert Downing, on November 13, 1972, denied leave to file the amended complaint. Judge Downing determined that Judge Egan's order of September 19 was final. The County of Cook's brief noted that no notice of appeal was filed from either order.

On September 19, 1974, the present presiding judge ordered the county

commissioners to pay petitioners the sum of $11,475.00 for their services as amici curiae. The amount awarded was that requested by petitioners. The County of Cook appeals that award of public funds. It contends that petitioners are not entitled to compensation for their services in a case of this nature, and that additionally petitioners lacked the requisite impartiality to act as amici curiae.

■■ No Illinois case has been brought to our attention which concerns the issue of payment of compensation out of public funds to an amicus curiae for his services. The appointment of an amicus curiae to make an investigation and to conduct a hearing in a contempt case is within the discretion of the trial judge. (*People v. Goss* (1957), 10 Ill. 2d 533, 141 N.E.2d 385; *Anderson v. Macek* (1932), 350 Ill. 135, 182 N.E. 745.) It is conceded that no statutory basis exists in Illinois either for appointment of amicus curiae or for authorization to pay the amicus out of public funds for services performed. The County of Cook points out that Illinois statute permits a trial court to appoint "Special State's Attorneys" and to compensate such appointees for their services (Ill. Rev. Stat. 1973, ch. 14, par. 6). This statute may be utilized only when the State's Attorney is unable or unwilling to participate in certain proceedings or is interested in any cause or proceedings. The present record suggests no such incapacity on the part of the present State's Attorney. And in any event, the court did not utilize that statute in the present proceedings.

It has been held in States where the court has the statutory authority to appoint an amicus curiae in a certain situation that it impliedly has the power to award reasonable compensation for services rendered. (*In re Phi Fathers Educational Ass'n* (1947), 239 Mo. App. 1105, 203 S.W.2d 885; 4 Am. Jur. 2d *Amicus Curiae* §7 (1962).) As no such statutory basis exists in Illinois, petitioners must demonstrate an alternative reason why public funds are to be paid to them.

Although no Illinois case resolves the issue of compensation to court-appointed amicus curiae, we are in accord with the following enunciated principle of law dealing with the problem:

> "Ordinarily, an amicus curiae who intervenes in a proceeding by leave of court is not entitled to compensation. Thus, it is held that an amicus curiae is not entitled to compensation where he is appointed to aid and assist the court for the purpose of vindicating the court's honor, as, for instance, where he is called upon to investigate whether fraud has been practiced upon the court. However, where the court appoints an amicus curiae who renders services which prove beneficial to a solution of the questions presented, the court may properly award him compensation and direct it to be paid by the party responsible for the situation that

prompted the court to make the appointment." 4 Am. Jur. 2d *Amicus Curiae* §7 (1962); see also 3A C.J.S. *Amicus Curiae* §14 (1973).

The petitioners in the present case were attempting to uphold the authority and dignity of the court by assisting in the contempt proceedings and thus under the general rule were not entitled to compensation. Moreover, no private party responsible for the situation requiring the appointment of amicus was directed to compensate the petitioners. Rather the court ordered public funds to be used to compensate petitioners.

The Supreme Court case of *Universal Oil Products Co. v. Root Refining Co.* (1946), 328 U. S. 575, 90 L. Ed. 1447, 66 S. Ct. 1176, sheds light on the issue of compensation to amicus. *Universal* is markedly different from the present case in that it was decided on the narrow ground that the amici had already been compensated by one of the private parties involved in the suit and should therefore have received no additional compensation. However, the case is instructional in that it reaffirms the general principle that "compensation is not the normal reward" of those who offer their services to the court as amici. Justice Frankfurter noted in the opinion that courts are hesitant to grant fees to an amicus curiae since governmental officers generally can be called upon to serve in their stead. We believe that observation to be pertinent in the present case.

■■ We conclude that petitioners cannot expect to be compensated from public funds for their efforts to vindicate the honor and dignity of the court through their role as amici curiae. In view of that determination, it is unnecessary for us to consider whether petitioners possessed the requisite impartiality to serve in the position of amici curiae.

For the reasons stated, the order of the circuit court of Cook County directing the Board of Commissioners of Cook County to pay attorneys' fees to petitioners is reversed.

Order reversed.

MEJDA, P. J., and DEMPSEY, J., concur.