SUBURBAN COOK COUNTY REGIONAL OFFICE OF EDUCATION *et al.*, Plaintiffs-Appellees, v. THE COOK COUNTY BOARD *et al.*, Defendants-Appellees (Suburban Cook County Regional Office of Education *et al.*, Plaintiffs-Appellants; and James E. Ryan, Attorney General, Appellant).

First District (6th Division) Nos. 1—95—3462, 1—95—3485 cons.

Opinion filed May 31, 1996.—Modified on denial of rehearing July 12, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, of counsel), for appellant James E. Ryan.

Jack O'Malley, State's Attorney, of Chicago (Patricia M. Shymanski, Patricia M. Moser, and Paul Castiglione, Assistant State's Attorneys, of counsel), for appellees Cook County Board.

Anthony G. Scariano, Lawrence Jay Weiner, and David A. Hemenway,

all of Scariano, Kula, Ellch & Himes, Chartered, of Chicago, for Suburban Cook County Regional Office of Education.

JUSTICE EGAN delivered the opinion of the court:

There are two appeals before us. The issue in the first appeal (1—95—3462) is the extent of the obligation of the Cook County Board (the Board) to provide funds for the Suburban Cook County Regional Office of Education (Suburban ROE); the issue in the other appeal (1—95—3485) is whether the Attorney General was required to represent the Suburban ROE when the Cook County State's Attorney refused to do so. The trial judge held that the Board had no obligation to provide funds for the operation of the Suburban ROE. The Suburban ROE appeals from that holding. The judge also held that the Attorney General was required to represent the Suburban ROE and appointed the law firm of Scariano, Kula, Ellch and Himes (Scariano or the Scariano firm) as special Attorney General to represent the Suburban ROE in the trial court and on the first appeal. He denied the motion of the Suburban ROE to appoint the Scariano firm as special State's Attorney. The Attorney General appeals from the order appointing the Scariano firm as special Attorney General; and the Suburban ROE appeals from the order denying appointment of the Scariano firm as special State's Attorney.

Before July 1994, the State of Illinois had been divided into numerous "educational service regions" which consisted of one or more counties. All of Cook County constituted one educational service region. Pursuant to the School Code (105 ILCS 5/1—1 et seq. (West 1992)), the chief administrative officer of the Cook County educational service region (County ESR) was designated the "Regional Superintendent of Schools." 105 ILCS 5/3—0.01(a) (West 1992). His salary and those of the assistant regional superintendents were paid by the State.

On August 14, 1992, the legislature abolished the office of regional superintendent of schools in the County ESR, effective August 7, 1995. 105 ILCS 5/3—0.01(b) (West 1992). All powers, duties and responsibilities of the regional superintendent of schools in the County ESR vested in the Illinois State Board of Education (ISBE). All supplies, equipment, furniture, monies held, and other items controlled by the regional superintendent of schools were to be transferred to the ISBE. 105 ILCS 5/3—0.01(b)(i) through (b)(iii) (West 1992).

On December 2, 1992, the legislature passed Public Act 87—1251 (Pub. Act 87—1251, eff. July 1, 1993), which amended article 3 of the School Code to accelerate to July 1, 1994, both the abolition of the office of regional superintendent of schools for the County ESR and the

transfer to the ISBE of the power of the regional superintendent of schools in the County ESR. 105 ILCS 5/3—0.01 (West 1994). On January 13, 1993, the legislature passed Public Act 88—89 (Pub. Act 88—89, eff. July 14, 1993), which amended article 3A of the School Code, effective the first Monday of August 1995, to designate the area of Cook County outside the City of Chicago as a single educational service region. 105 ILCS 5/3A—1 (West 1994). The legislature also redesignated each educational service region as a "regional office of education." 105 ILCS 5/3—0.01 (West 1994). Thus, pursuant to these various amendments to the School Code, the portion of Cook County outside the City of Chicago became the Suburban ROE. Article 4 of the School Code (105 ILCS 5/4—1 *et seq.* (West 1994)) provides that the county board (1) shall "[p]rovide for the county superintendent of schools a suitable office with necessary furniture and office supplies" (105 ILCS 5/4—2 (West 1994)); (2) may "[a]llow, when they deem it proper, reasonable traveling expenses for the office of county superintendent of schools" (105 ILCS 5/4—4 (West 1994)); and (3) may "[a]uthorize the county superintendent of schools to employ such assistants as he needs for the discharge of his duties and fix the compensation thereof, which compensation is to be paid out of the county treasury." 105 ILCS 5/4—6 (West 1994). However, each of sections 4—2, 4—4 and 4—6 contains the following exemption: "On and after July 1, 1994, the provisions of this Section shall have no application in any county having a population of 2,000,000 or more inhabitants." 105 ILCS 5/4—2, 4—4, 4—6 (West 1994). This exemption was in Public Act 88—89; it was not in those sections before. By the express terms of the exemption, therefore, these duties imposed on the Board by article 4 would appear to be inapplicable to the defendants. The plaintiffs, however, maintain that Public Act 88—89 contains a provision which negates the effect of the exemption. This case depends on the interpretation of Public Act 88—89, which will be discussed in more detail later.

The plaintiff, Dr. Lloyd W. Lehman, is the superintendent of the Suburban ROE. He was initially appointed superintendent on September 5, 1992, when the position was still the regional superintendent of the County ESR. On July 1, 1994, as directed by sections 3—0.01(b)(i) through (b)(iii) of the School Code, he transferred the power of his office, along with various enumerated items, to the ISBE. Dr. Lehman was elected the superintendent of Suburban ROE in the November 8, 1994, general election by the voters in the area of Cook County outside Chicago; and he was sworn in on August 7, 1995. The plaintiffs Joseph Kaczanowski, Robert Ingraffia and Candy Cash were sworn in the same day; Kaczanowski as deputy superintendent and the others as associate superintendents.

The powers and authority of the superintendent of an ROE are specified in sections 3—14.1 through 3—14.25 of the School Code. 105 ILCS 5/3—14 (West 1992). In general, he is required to exercise supervision over the school districts located within the Suburban ROE. Dr. Lehman believed that the Board was required to fund his office and staff pursuant to article 4 of the School Code. He made requests of the Board to provide such funding. On September 6, 1995, he submitted a budget for the remaining fiscal year 1995 to the Board for its approval. The Board declined to adopt the budget and, indeed, determined that it would provide no funding for the Suburban ROE.

Pursuant to section 3A—15 of the School Code (105 ILCS 5/3A—15 (West 1992)), Dr. Lehman sought legal representation from the Cook County State's Attorney. The State's Attorney informed Dr. Lehman that the matter would be best resolved through the political process. Unsatisfied, Dr. Lehman determined that he would have to file suit against the Board. The State's Attorney declined to file this action and urged Dr. Lehman not to do so by private counsel because the State's Attorney was Dr. Lehman's legal representative. Nonetheless, Dr. Lehman obtained private counsel, the Scariano firm, which filed the complaint for him individually and in his official capacity. Also named as plaintiffs were the Suburban ROE, Kaczanowski, Ingraffia, Candy Cash and the Board of Education of School District No. 87. The defendants are the Board and the commissioners of Cook County in their official capacity; the Illinois State Board of Education and Joseph A. Spagnolo in his official capacity as State Superintendent for the Illinois State Board of Education. The complaint is primarily a *mandamus* action to compel the Board to provide funds for the operation of the Suburban ROE pursuant to article 4 of the School Code.

The defendants moved to dismiss the complaint on two separate grounds: (1) under article 4 of the School Code, they were exempt from any funding obligations; and (2) even if they had funding obligations, because Dr. Lehman is a state official and sought funding for a state office, those obligations constituted an unfunded state mandate in violation of the State Mandates Act (30 ILCS 805/1 *et seq.* (West 1992)). The trial judge agreed with both arguments of the Board and dismissed the complaint.

Section 3—0.01(b), as noted, provides for the abolition of the office of regional superintendent in Cook County, effective July 1, 1994. After that date all powers of that office were transferred to the ISBE. Subsection (b) ends with this amendment, which was in Public Law 88—89:

"Upon and after the first Monday of August 1995, references in

this Code and elsewhere to education service regions of 2,000,000 or fewer inhabitants shall exclude any educational service region containing a city of 500,000 or more inhabitants and references in this Code and elsewhere to educational service regions of 2,000,000 or more inhabitants shall mean an educational service region containing a city of 500,000 or more inhabitants regardless of the actual population of the region." Pub. Act 88—89, § 3—0.01(b), eff. July 14, 1993.

It is that language at the end of subsection (b) that the plaintiffs rely upon for their argument that the exemptions contained in article 4 do not apply.

The plaintiffs posit long-regarded rules of statutory interpretation, such as the need to avoid interpretations of statutes that would lead to absurd, inconvenient and unjust results (*Baker v. Miller*, 159 Ill. 2d 249, 636 N.E.2d 551 (1994)) and the need to interpret a statute in order to carry out its purpose or object. *Bilek v. Board of Education of Berkeley School District No. 87*, 61 Ill. App. 3d 323, 377 N.E.2d 1259 (1978).

Sections 4—2, 4—4 and 4—6 of the School Code exempt *counties* with more than 2 million inhabitants. Section 3—0.01 does not state that reference to counties of 2 million or more inhabitants shall mean "an educational service region containing a city of 500,000 or more inhabitants."

The plaintiffs' argument is that, construing article 4 and Public Law 88—89 together, "the language in article 4 stating that 'the provisions of this section shall have no application in any county having a population of 2,000,000 or more inhabitants' should be read as 'a city of 500,000 or more inhabitants.' " This is a statutory construction stretch that we are unwilling to make.

The plaintiffs identify the object and purpose of the amendments thus: The "legislature insured that the Suburban ROE would be funded by Cook County, but also insured that Cook County would not be required to fund services for the City of Chicago." In other words, according to the plaintiffs, the legislature intended that the taxpayers of Chicago, who pay into the Cook County common fund, would be required to pay for a portion, if not the greater portion, of the expenses of the Suburban ROE, which would provide no service to the taxpayers of Chicago and, in addition, the legislature wanted to make certain that the taxpayers of Chicago would not get any part of their own money back in the form of services. It is clear to us that this would be an unjust result and was not the purpose or object of the statute. In fact, it is apparent from the comments of the legislators sponsoring the bill abolishing the County ESR that the purpose and

object of the statute was to relieve the taxpayers of *all* of Cook County from funding an office which allegedly performed unnecessary services that were duplicative of the services provided by the ISBE. We disagree with the argument of the plaintiffs that the legislative intent behind the enactment of the statute abolishing the County ESR is irrelevant.

■ We note that, under the law existing before the amendments, the regional superintendent was empowered "[t]o employ, with the approval of the county board, such additional employees as are needed for the discharge of the duties of the office." 105 ILCS 5/3—15.6 (West 1992). That section was also amended as follows:

> "On and after July 1, 1994, the provisions of this Section shall have no application in any educational service region having a population of 2,000,000 or more inhabitants." Pub. Act 87—1251, § 2, eff. July 1, 1993.

The plaintiff, Dr. Lehman, is a regional representative of an educational service region having a population of 2 million or more inhabitants, regardless of whether we interpret the term "educational service region" to be synonymous with "county" or whether we interpret it to mean that part of the county outside Chicago. Under this section, therefore, the Board is not involved. We concede that the term "educational service region" is used in a sometimes confusing manner; and we concede that the result of the decision of the circuit court may be that Dr. Lehman cannot adequately perform the duties of his office. But it is not the function of the court to supply by judicial interpretation what the legislature has omitted, especially when the court's decision would affix fiscal responsibility on a public body. *Cf. Gabriel Builders, Inc. v. Westchester Condominium Ass'n,* 268 Ill. App. 3d 1065, 645 N.E.2d 453 (1994). If there are cracks in the legislation, and there are, the grout is in the hands of the legislature.

We find it significant that in the case of educational service regions that comprise more than one county, the legislature was careful to apportion funding responsibility upon the respective counties based on the assessed value of all taxable property in that county. 105 ILCS 5/3A—7 (West 1994). To saddle all of the taxpayers of Cook County with the responsibility of paying for a facility to service only a particular part of Cook County is certainly contrary to the generally accepted notion, recognized by the legislature, that the tax burden for funding a service shall be borne by those who benefit from the service. See, *e.g.,* Mosquito Abatement District Act (70 ILCS 1005/0.01 *et seq.* (West 1992)); Metropolitan Water Reclamation District Act (70 ILCS 2605/1.1 *et seq.* (West 1992)).

We conclude that the trial judge properly dismissed the com-

plaint on the ground that the defendants were exempt from article 4. In view of that conclusion, we need not address the additional ground relied on by the judge, that the complaint was barred under the State Mandates Act. The judgment of the circuit court dismissing the complaint is affirmed.

We turn now to the appeal of the Attorney General from the order appointing the Scariano firm as special Attorney General and the appeal of the plaintiffs from the order denying appointment of the firm as special State's Attorney.

Section 3A—15 of the School Code provides that "[u]pon request the State's Attorney of the county where the regional superintendent's office is located shall act as the legal representative of the regional superintendent of schools." 105 ILCS 5/3A—15 (West 1992). Pursuant to section 3A—15, in November 1993, Dr. Lehman spoke to Patricia Shymanski, the chief of the civil actions bureau of the Cook County State's Attorney's office, to discuss legal issues arising from another dispute between the former REO and the Board regarding an audit of the regional office for the fiscal year of 1991. According to Lehman's affidavit, Shymanski informed him that in any dispute between the Board and the REO and its superintendent, the State's Attorney would represent the Board, "because they were the State's Attorney's 'major client.' " Shymanski submitted an affidavit in response to Lehman's affidavit. Contrary to the statement of the State's Attorney in his petition for rehearing, we did not overlook her affidavit. She did not deny that she made that statement.

On August 23, 1995, Dr. Lehman met with Shymanski to discuss the difficulties he was experiencing in obtaining funding for the Suburban REO. On August 24, 1995, Shymanski sent a letter to Dr. Lehman, identified as "Confidential: Attorney-Client Privilege," which is as follows:

"As you know, the State's Attorney's office is the statutory legal representative of your office. Under Illinois law, your office has no authority to retain the services of private counsel. While we are cognizant of the dilemma you are currently facing, we strongly advise against filing the lawsuit prepared on your behalf by outside counsel.

We appreciate your present lack of resources and we stand ready to assist and advise you in resolving your immediate problems. As we discussed in our meeting with you on August 23, 1995, we believe that it will be in the long term best interest of your office to work from within County government to obtain the funding and other support needed for you[r] office to function. As we suggested, a specific budget proposal should be prepared that ad-

dresses the needs of your office for the remainder of this fiscal year. We further suggest that you send each member of the Cook County Board of Commissioners a letter summarizing the emergent nature of your needs and eliciting [sic] support.

To the extent that you continue to have unresolved issues with the State Board of Education, we, of course, stand ready to assist you in resolving those issues."

The next day, Anthony G. Scariano sent a letter to Shymanski with a copy of the draft proposed budget which Dr. Lehman intended to submit on September 6. The letter requested that, if litigation was to be instituted to compel the Board to fund the office, the State's Attorney file the complaint, a copy of which was submitted with the letter. The letter also asked that if the State's Attorney believed that his office "cannot or will not file a case because it represents both the Cook County Board" and the Suburban ROE, Scariano would appreciate being so advised in order that Dr. Lehman might retain his own attorneys to prosecute the action. The State's Attorney refused to file the lawsuit. Dr. Lehman also requested the Attorney General to file the suit. The Attorney General apparently did not respond to Dr. Lehman's request.

After the plaintiffs filed the action, the State's Attorney moved to disqualify Scariano, arguing that under section 3A—15 only the State's Attorney was the legal representative of the regional superintendent in the superintendent's official capacity. (The State's Attorney did not and does not object to Scariano representing Dr. Lehman or his assistants in their individual capacity. Scariano, however, may not be paid by the county.) Scariano responded by filing a petition requesting that the firm be appointed special State's Attorney pursuant to section 3—9008 of the Counties Code. 55 ILCS 5/3—9008 (West 1992). The trial judge denied the State's Attorney's motion to disqualify; however, he found that Dr. Lehman was a state officer and the state should bear the financial burden of the litigation. On his own motion, he appointed the Scariano firm as special Attorney General under section 6 of the Attorney General Act. 15 ILCS 205/6 (West 1992).

The Attorney General was later permitted to file a response, in which he argued that the appointment of Scariano as special Attorney General (1) was barred by the doctrine of sovereign immunity; (2) would conflict with the State's Attorney's duty to represent Dr. Lehman and (3) was impermissible under section 6 of the Attorney General Act. The judge repeated his finding that Dr. Lehman was a state official and that the State should, therefore, pay for the litigation. The judge also found that both the Attorney General and the

State's Attorney were "interested" in the case so that the appointment of a special counsel was necessary and appropriate under either of the applicable sections of the Counties Code and the Attorney General Act. He based his finding that they were both "interested" on the fact that the State's Attorney was up for reelection in 1996 and that both he and the Attorney General might be candidates for governor in 1998.

In issuing his ruling, the judge relied on section 6 of the Attorney General Act, which permits a court to "appoint some competent attorney to prosecute or defend" an action "[w]henever the attorney general is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend." 15 ILCS 205/6 (West 1992) The judge also considered an almost verbatim provision in section 3—9008 of the Counties Code. The judge determined that the appointment of special counsel was authorized by each of the enactments, but he decided to appoint the Attorney General because the judge found that Dr. Lehman was a state officer. The judge did not address section 3A—15 of the School Code.

■ We begin our discussion with a disagreement with the trial judge that both the Attorney General and the State's Attorney were "interested" to the extent required by their respective governing statutes. The supreme court has held that the only situations in which the Attorney General or the State's Attorney could be considered to be interested so as to authorize appointment of a special Attorney General or State's Attorney are where (1) he is interested as a private individual; and (2) he is an actual party to the litigation. See *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 372 N.E.2d 50 (1977). Neither the State's Attorney nor the Attorney General is an actual party in this litigation; and the record does not support a finding that either the Attorney General or the State's Attorney has a private individual interest in the litigation. The facts that the State's Attorney is a candidate for reelection and that he and the Attorney General might be candidates for governor do not rise to the level of a personal interest. *Cf. Baxter v. Peterlin*, 156 Ill. App. 3d 564, 509 N.E.2d 156 (1987).

■ The plaintiffs do not cite, nor have we found, any support for the judge's order appointing Scariano as special Attorney General. The only authority cited by the judge was the fact that Dr. Lehman is a state officer. He concluded that Dr. Lehman was a state officer because Dr. Lehman's salary is paid by the State. But many officers elected only within a county receive compensation from the State. See, *e.g.*, 55 ILCS 5/3—10007 (West 1992) (county treasurer). The fact

that Dr. Lehman may be a state officer is not controlling in the face of the express mandate of section 3A—15 of the School Code, a special statute rather than a general one, which imposes the *duty* of representing the regional superintendent on the State's Attorney. To illustrate further, we point out that section 3—9005(a)(4) imposes the *duty* on the State's Attorney to "defend all actions and proceedings brought against his county, or against any county or *State* officer in his official capacity, within his county." (Emphasis added.) 55 ILCS 5/3—9005(a)(4) (West 1992).

We agree that there is a logical consistency in the trial judge's ruling that if the county as a whole is not obligated to fund the operation of the regional superintendent's office, the county as a whole should not be required to provide legal representation by an officer who is paid by, and who represents, the county as a whole. We find, however, that section 3A—15, consistent or not, clearly removes any *obligation* of the Attorney General to provide legal representation to Dr. Lehman and places it squarely on the State's Attorney. For these reasons, the order appointing the Scariano firm as special Attorney General is vacated.

Still unresolved is the question of who may represent the superintendent and who shall pay for that representation. We should first identify what are not issues. This case does not involve an attempt on the part of a legislative body or the judiciary to diminish the powers of the State's Attorney or to interfere with his discretion. *Cf. People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 490 N.E.2d 1288 (1986); *People ex rel. Courtney v. Ashton*, 358 Ill. 146, 192 N.E.2d 820 (1934); *People v. Thompson*, 88 Ill. App. 3d 375, 410 N.E.2d 600 (1980). Nor does it involve in a direct sense any conflict of interest on the part of the State's Attorney (*cf. People ex rel. Sklodowski v. State*, 162 Ill. 2d 117, 642 N.E.2d 1180 (1994)) or his *right* to represent separate public officials in a dispute between them. *Cf. Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 372 N.E.2d 50 (1977). We say it does not involve those questions in a direct sense because the State's Attorney did not represent both parties. We will discuss *Sklodowski* and *Environmental Protection Agency* later.

The relationship between Dr. Lehman and the State's Attorney is not the traditional lawyer-client relationship. *Environmental Protection Agency*, 69 Ill. 2d at 401. Dr. Lehman does not have the right to unilaterally select a private attorney to represent him in his official capacity. *Environmental Protection Agency*, 69 Ill. 2d at 402.

What is involved here is the very troublesome question of the right to representation of an elected official when his opinion of the law applicable to his office is in conflict with the opinion of the lawyer

whose statutory duty is to represent that elected official. We have been unable to find any case, and none has been cited to us by the parties, which provides a clear-cut, definitive answer to the question.

As a preliminary matter, we wish to express some puzzlement about the position of the State's Attorney. We make this observation because of the advice given by the State's Attorney in the letter sent by Ms. Shymanski to Dr. Lehman:

> "We appreciate your present lack of resources and we stand ready to assist and advise you on resolving your immediate problems. As discussed in our meeting with you on August 23, 1995, we believe that it will be in the long-term best interest of your office to work from within County government to obtain the funding and other support needed for you[r] office to function. As we suggested, a specific budget proposal should be prepared that addressed [sic] the needs of your office for the remainder of this fiscal year. We further suggest that you send each member of the Cook County Board of Commissioners a letter summarizing the emergent nature of your needs and eliciting [sic] support."

"It is presumed that [the State's Attorney] will act under such a heavy sense of public duty and obligation for enforcement of all our laws that he will commit no wrongful act." *People ex rel. Kuntsman v. Nagano*, 389 Ill. 231, 252, 59 N.E.2d 96 (1945). He, as much as the Board, has the duty to safeguard the public purse from illegal expenditures. It would be his duty, therefore, to take steps to ensure that county funds are disbursed according to law. If it was the State's Attorney's belief that the Board was required to fund Dr. Lehman's office, it would have been his obligation to inform the Board of that fact. His best judgment should not be swayed by which of the two disputants is the "better client." If, on the other hand, it was the State's Attorney's opinion that the Board was not obligated to fund the Suburban REO, which apparently was and is the State's Attorney's opinion, it would also be the State's Attorney's obligation to inform the Board and Dr. Lehman. His "advice" that could lead to funding by the Board was inconsistent with his opinion that the Board had no authority to give Dr. Lehman the funds. And if the Board did decide to fund the Suburban REO, it would have been the duty of the State's Attorney to take steps to bar the county from an *ultra vires* expenditure of county funds. All of which leads to this question: If the State's Attorney filed an action to bar the Board from funding the Suburban ROE, would the individual county commissioners be required to pay for their legal representatives out of their own pockets? If the Board's position is correct in this case, they would be so required.

It is the State's Attorney's position that his is the final word on all legal questions that might arise in the operation of county government and that the only recourse available to any other elected official, who disagrees with him and seeks to litigate, is to litigate at his own expense. But we see no reason that the presumption that the State's Attorney will act under a heavy sense of public duty and obligation for enforcement of all our laws should not also be applicable to Dr. Lehman. He posed a proper question for resolution: The very funding for the administration of his office. His was not a frivolous request to the Board; indeed, he made the request at the suggestion of the State's Attorney, his lawyer. He was perfectly justified in seeking a resolution of the problem in court. In our judgment, it would be manifestly unfair to require Dr. Lehman to seek resolution of this problem at his own expense.

The plaintiffs have cited some cases which are somewhat in point but are not controlling. In *People ex rel. Barrett v. Board of Commissioners*, 11 Ill. App. 3d 666, 297 N.E.2d 307 (1973), the Cook County clerk filed a petition for a writ of *mandamus* against the Board alleging that his salary as county clerk had been reduced contrary to the provisions of the Illinois Constitution. On motion of the petitioner, the trial judge appointed a private law firm as a special State's Attorney to prosecute the law suit on behalf of the clerk. The appointment was made because the State's Attorney was officially committed to represent the County Board and had issued a legal opinion that the reduction of the clerk's salary was correct as a matter of law. The trial judge also decided, contrary to the State's Attorney's argument and previous opinion, that the County Board had improperly reduced the clerk's salary. The County Board appealed the appointment but not the ruling on the merits.

The appellate court rejected the Board's claim on the ground that the Board had waived the point by failing to object to the appointment in the trial court. The court then added, "Even assuming there was no waiver, the appointment was proper." *Barrett*, 11 Ill. App. 3d at 668. That offhand observation without discussion is not clear authority for the plaintiffs' position, although factually the case is in point.

Another case cited by the plaintiffs is *In re Mortimer*, 44 Ill. App. 3d 249, 358 N.E.2d 92 (1976). The issue in that case was whether payment out of public funds might be made to an *amicus curiae*. The appellate court reversed an award of public funds to the *amicus curiae* and, in analyzing the predecessor to section 3—9008 of the Counties Act, said that the "statute may be utilized only when the State's Attorney is unable or *unwilling* to participate in certain proceedings or

is interested in any cause or proceedings." (Emphasis added.) *Mortimer*, 44 Ill. App. 3d at 251. That pronouncement of the appellate court, of course, was *obiter dicta* and may not be considered as binding precedent.

There is, however, some guidance from the supreme court in *People ex rel. Sklodowski v. State*, 162 Ill. 2d 117, 642 N.E.2d 1180 (1994), in which the plaintiffs, who were beneficiaries and participants in five retirement systems funded by the State of Illinois under the Illinois Pension Code, filed suit against the Governor and other elected officials of the State and "nominal defendants" who were the trustees of the five retirement systems. The Attorney General filed an appearance on behalf of three of the retirement systems and all of the other defendants.

The plaintiffs alleged that a conflict of interest existed between the Attorney General's representation of the individual defendants and the retirement systems. The supreme court made this observation:

> "While there is an apparent conflict between the interests of the State defendants (to divert the pension funds to other uses) and the responsibilities of the retirement systems (to regain financial stability in order to meet current and future pension obligations), we do not believe that the Attorney General's legal representation of three of the retirement systems will result in prejudice to any of the parties to this litigation." *Sklodowski*, 162 Ill. 2d at 127-28.

The court held that the plaintiffs' interest was coextensive with that of the *nominal defendants*, the retirement systems, and that the plaintiffs were "capable of continuing their advocacy unaffected by the Attorney General's representation." *Sklowdowski*, 162 Ill. 2d at 128. Of particular significance to us is the following observation of the supreme court:

> "In the instant case, two of the retirement systems are being represented by independent private counsel appointed as special assistant Attorneys General. *We approve of this procedure*, which clearly removes the taint of perceived conflict." (Emphasis added.) *Sklowdowski*, 162 Ill. 2d at 127.

Even stronger than the facts of *Sklodowski*, the facts before us disclose that a conflict exists between the interest of the plaintiffs and the interest of the Board and that appointment of Scariano would remove the taint of a real and not just a perceived conflict.

On the question of conflicts, we revert back to *Environmental Protection Agency*, in which the supreme court said that the Attorney General's responsibility "will occasionally, if not frequently, include instances where State agencies are the opposing parties." *Environ-*

*mental Protection Agency*, 69 Ill. 2d at 401. The court also said the following:

"Indeed, where he or she is not an actual party, the Attorney General may represent opposing State agencies in a dispute. See *Progressive Party v. Flynn* (1948), 401 Ill. 573, 580; see also *City of York v. Pennsylvania Public Utility Com.* (1972), 449 Pa. 136, 295 A.2d 825, and *Arizona State Land Department v. McFate* (1960), 87 Ariz. 139, 348 P.2d 912; *cf., People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569." *Environmental Protection Agency*, 69 Ill. 2d at 401.

A closer examination of *Environmental Protection Agency*, discloses that it is not a substantial support for any claim that an Attorney General or State's Attorney may always represent two opposing officials for whom the Attorney General or State's Attorney is required to provide representation. First, the supreme court identified the issue as "whether a State agency may employ private counsel to represent it and have his or her fees paid by the Attorney General *in the absence of appointment of such counsel by the court* or the Attorney General." (Emphasis added.) *Environmental Protection Agency*, 69 Ill. 2d at 398. Second, the supreme court pointed out that the Agency was only a nominal party to the litigation and not the real party in interest. The issue, as refined by the supreme court, was whether the Attorney General was "interested" within the meaning of the statute. The court held that the Attorney General was not "interested" within the meaning of the statute. (So have we held, but in our judgment that does not end the matter.) Third, the supreme court said, "it is clear that the appellate court had the discretion to appoint or deny appointment of outside counsel." *Environmental Protection Agency*, 69 Ill. 2d at 400. That is precisely the position of the plaintiffs in this case: the trial judge had the discretion to appoint or deny appointment of outside counsel. Last, with all due respect, we do not believe that the cases cited by the supreme court for its holding that the Attorney General may represent opposing state agencies in a dispute support that language. In *People ex rel. Scott v. Illinois Racing Board*, the supreme court held only that the Attorney General could appeal from an order of the Illinois Racing Board. In *Progressive Party v. Flynn*, the issue was whether the supreme court lost jurisdiction because of statements made by the Attorney General in his brief. *City of York* and *Arizona State Land Department* held opposite to what the supreme court has cited them for. In *City of York*, the court said that intervention by the Attorney General "would create an irreconcilable conflict of interest and thus cannot be permitted." *City of York*, 449 Pa. at 148, 295 A.2d at 832. In

*Arizona State Land Department*, 87 Ariz. at 147-48, 348 P.2d at 917-18, the Arizona Supreme Court held that the Attorney General could *not* file an action against the state agency, which by law was represented by the Attorney General.

In *In re Vrdolyak*, 137 Ill. 2d 407, 560 N.E.2d 840 (1990), the supreme court held that the Code of Professional Responsibility was binding on a lawyer-legislator even though no attorney-client relationship existed between the lawyer and his public office. It also held that he could be accountable for a conflict of interest. The point to be made is that the supreme court has recognized that the rule against conflicts of interest applies to lawyers acting in their official capacity and, in *Sklodowski*, expressed the view that where a conflict of interest arises in a dispute between two public agencies, a special attorney should be appointed to represent one of them.

■ We judge that a proper procedure in cases where an unreconcilable conflict arises between two officials the State's Attorney is obliged to represent would require the invocation of the court's discretion by either the State's Attorney or the officials. (In fact, it has been recognized that a court may appoint a special State's Attorney upon its own motion. *In re Petition of McNulty*, 60 Ill. App. 3d 701, 377 N.E.2d 191 (1978).) That procedure would insure that the official could not arbitrarily seek representation from a private attorney, nor seek private representation to advance a frivolous legal position. If the official is able to establish a colorable claim which the State's Attorney is unwilling to support or if the State's Attorney is representing two agencies which are in conflict, the court should be able to exercise its discretion and to appoint private counsel.

The procedure followed in this case was a proper one. Unlike the Environmental Protection Agency, Dr. Lehman sought appointment by the court. His complaint disclosed a colorable claim, not a frivolous one. He also established that the State's Attorney, who is obliged to represent both Dr. Lehman and the Board, was unwilling to represent Dr. Lehman. We conclude, therefore, that the judge did not abuse his discretion in appointing the Scariano firm to represent Dr. Lehman but that he should have appointed the Scariano firm a special assistant State's Attorney.

■ In their petitions for rehearing, both the Attorney General and the State's Attorney argue that they are members of the executive branch of government and that our holding is a judicial usurpation of executive discretion. Our answer to that argument is that they are lawyers and as such are subject to the control by the supreme court as pronounced in its rules. The legislature may not interfere with the courts' control of the conduct of the lawyers who

practice before them. If a lawyer's representation amounts to a conflict of interest, the courts have the power to remove the conflict; and the legislature has no power to give any lawyer a right which the supreme court tells the lawyer he may not have.

For these reasons, the order denying the petition to appoint the Scariano firm a special State's Attorney is also vacated and the cause is remanded. After the trial judge determines the appropriate compensation to be paid to the Scariano firm for representation of the plaintiffs in the trial court and on this appeal, he shall direct the Board to pay the appropriate compensation.

No. 1—95—3462, Judgment affirmed.

No. 1—95—3485, Judgment vacated and remanded with directions.

ZWICK, P.J., and McNAMARA, J., concur.