SIXTH DIVISION
 Filed: 2/21/97


No. 1-95-2426


JOHN F. TULLY, individually and on ) Appeal from the 
behalf of all others similarly situated, ) Circuit Court of 
 ) Cook County.
 Plaintiff, )
 )
 v. )
 )
JIM EDGAR, sued in his official capacity as )
Governor of the State of Illinois, JAMES )
"PATE" PHILIP, sued in his official capacity )
as President of the Illinois Senate, and )
GLORIA JACKSON BACON, M.D., WILLIAM D. )
ENGELBRECHT, JEFFREY GINDORF, SUSAN L. )
GRAVENHORST, THOMAS F. LAMONT, ADA N. LOPEZ, )
MARTHA O'MALLEY, and JUDITH R. REESES, sued )
in their official capacities as Trustees of )
the Board of Trustees of the University of ) 
Illinois, )
 )
 Defendants, )
 )
and )
 )
JUDITH ANN CALDER, sued in her official )
capacity as trustee of the Board of Trustees )
of the University of Illinois, )
 )
 Defendant-Appellee. ) 
_____________________________________________

JAMES E. RYAN, Attorney General of ) 
the State of Illinois, ) Honorable
 ) Albert Green,
 Appellant. ) Judge Presiding.
_________________________________________________________________

 JUSTICE ZWICK delivered the opinion of the court:
 The issues presented in this case, brought by the Attorney
General as an interlocutory appeal pursuant to Supreme Court Rule
307(a)(1) (134 Ill. 2d 307(a)(1)), concern whether the circuit
court acted within its authority in: (1) appointing attorney Lee
J. Schwartz as special Attorney General to represent University
of Illinois trustee Judith Ann Calder in the above-captioned
matter, and (2) ordering the Attorney General to process monthly
vouchers for Mr. Schwartz's fees, including fees relating to
Calder's "Affirmative Pleadings." 
 In early 1995 the General Assembly passed Public Act 89--5,
"An Act Relating to the University of Illinois" (the University
Act)(Pub. Act 89--5, eff. Jan. 1, 1996). Governor Edgar
subsequently signed the University Act which terminated the terms
of each of the then-sitting trustees of the University of
Illinois on January 1, 1996. The University Act replaced the
elected trustees with trustees to be appointed by the Governor.
 On May 5, 1995, plaintiff, John F. Tully, as a private
citizen and voter, brought a declaratory judgment action against
the Governor and President of the Illinois Senate, as well as
against Calder and the eight other elected trustees of the
University of Illinois. Plaintiff challenged the validity of the
University Act in that it prematurely terminated the terms of
office for which the trustees had been elected. 
 On June 4, 1995, attorney Lee J. Schwartz sent a letter to
the Attorney General requesting that he be made a special
Attorney General to represent Calder in the litigation pursuant
to the State Employee Indemnification Act, 5 ILCS 350(2)(b) (West
1994)(the Indemnification Act). Schwartz indicated that Calder
was considering challenging the constitutionality of the
University Act. 
 In correspondence dated June 27, 1995, the Attorney
General's Chief of Staff, Stephen J. Culliton, refused Schwartz's
request. He noted that both Jenner & Block, counsel for the other
trustees, as well as the Attorney General's office, were
available to defend Calder. In addition, Culliton stated that the
Indemnification Act did not contemplate the appointment of
private counsel for the purposes of affirmatively challenging the
constitutionality of legislation.
 Subsequently, on July 7, 1995, Calder appeared in the
circuit court with attorney Schwartz seeking his appointment as
special Attorney General to argue on her behalf. Schwartz noted
that the Attorney General had refused to represent Calder either
directly or by appointing a special Attorney General to handle
the case. He also noted that elected officials are entitled to
retain their own attorneys under section 2 of the Indemnification
Act. See 5 ILCS 350/2(b) (West 1996). The court allowed Schwartz
to proceed as special Attorney General. Schwartz subsequently
filed an answer to plaintiff's complaint on Calder's behalf. In
addition, Schwartz filed Affirmative Pleadings challenging the
validity of the University Act on eight grounds not raised by the
plaintiff's initial complaint.
 On July 12, 1995, the Attorney General filed a motion in the
circuit court seeking reconsideration of the court's order
appointing Schwartz. Prior to that hearing, attorney William D.
Heinz circulated a letter on behalf of Jenner & Block explaining
his firm's position with regard to the litigation. He stated that
his firm was ready and willing to represent Calder, but could not
do so in light of Calder's insistence on being represented by
Schwartz. He also explained that he had a conflict of interest in
taking the case as the other trustees had resolved not to
challenge the validity of the University Act, a position
inconsistent with the one Calder wished to take. See generally,
Code of Professional Responsibility, 134 Ill. 2d R. 1.2(a)("[a]
lawyer shall abide by a client's decision concerning the
objectives of representation"); 134 Ill. 2d R. 1.7 (prohibiting
an attorney from representing clients with adverse positions).
 The circuit court denied the Attorney General's motion for
reconsideration and the Attorney General promptly filed this
appeal. On motion of the Attorney General, we stayed the circuit
court's order requiring the Attorney General to process monthly
vouchers.
 The plaintiff's case proceeded in the circuit court with
Schwartz representing Calder without compensation. Subsequently,
the circuit court ruled in favor of plaintiff on the substantive
issues of the case and consistently with Calder's position that
the University Act prematurely and unconstitutionally terminated
the trustees' terms in office. On direct and expedited appeal to
the Supreme Court of Illinois, the circuit court's ruling was
affirmed. Tully v. Edgar, 171 Ill. 2d 297, 664 N.E.2d 43 (1996).
The supreme court held that the University Act affected the
public's fundamental right to vote and that, in the absence of a
compelling state interest, Illinois voters are entitled to have
elected officials serve out the full terms for which they have
been elected. Tully, 171 Ill. 2d at 311.
 The only claim not resolved by the supreme court's opinion
in Tully is the question of whether the circuit court properly
appointed Schwartz as a special Attorney General. The Attorney
General argues the appointment violated sovereign immunity as
well as the doctrine of separation of powers; that the Attorney
General's obligation to represent Calder is limited by the terms
of the Indemnification Act to "defending" Calder against
liability, a duty which, in this case, did not include
challenging the constitutionality of the University Act; and that
he acted within his discretion in insisting that Calder be
represented by Jenner & Block, attorneys for the other trustees.
Calder argues, in response, that sovereign immunity and the
separation of powers doctrine should not apply to the present
dispute in light of the Attorney General's statutory obligations
under the Indemnification Act. She also argues that her
Affirmative Pleadings constituted a reasonable aspect of her
defense of the case, as contemplated by the Indemnification Act.
 Section 2(a) of the Indemnification Act provides, in part,
that state employees who are sued for official misconduct are to
be indemnified by the State for any resulting personal liability.
5 ILCS 350/2(a)(West 1994). In addition, section 2 provides that
a defendant is to be defended, as necessary, by the Attorney
General. 5 ILCS 350/2(a)(West 1994). Section 2(b) of the
Indemnification Act provides, in part, that if the Attorney
General is unable to represent the defendant under section 2(a)
because of a conflict of interest, or if the employee is an
elected official, the employee may retain his or her own attorney
to conduct the defense. 5 ILCS 350/2(b)(West 1994).
 The Attorney General emphasizes that, as a condition of
receiving representation by his office under the Indemnification
Act, state employees are required by the terms of section 2(a) to
"cooperate with the Attorney General in [the employee's] defense
of the action and *** consent that the Attorney General shall
conduct the defense as [the Attorney General] deems advisable and
in the best interests of the employee, including settlement in
the Attorney General's discretion." 5 ILCS 350/2(a) (West 1994). 
The Attorney General also points out that the Indemnification Act
repetitively addresses the Attorney General's obligation to
"defend" State employees. In the Attorney General's view, his
duty to "defend" a state employee under section 2 of the
Indemnification Act does not include filing affirmative pleadings
such as those filed by Calder.
 Calder responds that the "cooperate," "consent" and
"settlement" requirements set out in section 2(a) of the
Indemnification Act do not apply to her as she is entitled, as an
elected official, to engage private counsel under the terms of
section 2(b). Calder argues that it would be anomalous for the
Indemnification Act to provide her with the benefit of choosing
her own private counsel, but then to require that counsel to
receive approval from the Attorney General in how her defense
should be conducted.
 The fundamental canon of statutory construction is to
ascertain and give effect to the intention of the legislature.
Varelis v. Northwestern Memorial Hospital, 167 Ill.2d 449, 454,
657 N.E.2d 997 (1995). In doing so we look principally to the
words of the statute itself (Metropolitan Life Insurance Co. v.
Washburn, 112 Ill.2d 486, 492, 493 N.E.2d 1071 (1986)), for the
language used by the legislature is the best indication of
legislative intent (Kirwan v. Welch, 133 Ill.2d 163, 165, 549
N.E.2d 348 (1989); County of Du Page v. Graham, Anderson, Probst
& White, Inc., 109 Ill.2d 143, 151, 485 N.E.2d 1076 (1985)). When
the statutory language is clear, as here, no resort is necessary
to other tools of interpretation. Toner v. Retirement Board of
Policemen's Annuity and Benefit Fund, 259 Ill. App. 3d 67, 70,
630 N.E.2d 1163 (1994). 
 There is no dispute that Calder has been sued in her
official capacity as an elected State official. As such, there
can be no reasonable dispute that she is entitled to be
represented by private counsel under the clear and unambiguous
terms of section 2(b) of the Indemnification Act. The
Indemnification Act provides in relevant part:
 "In the event that the defendant in the
 proceeding is an elected State official, *** 
 the elected State official may retain his or
 her attorney, provided that said attorney
 shall be reasonably acceptable to the
 Attorney General. In such case the State
 shall pay the elected State official's court
 costs, litigation expenses, and attorneys'
 fees, to the extent approved by the Attorney
 General as reasonable, as they are incurred."
 5 ILCS 350/2(b)(West 1994).
 We find it notable that the "cooperate" "consent" and
"settlement" language used by section 2(a) of the Indemnification
Act does not appear in section 2(b). This omission is
significant. The only requirement imposed by section 2(b) of the
Indemnification Act is that the attorney chosen be "reasonably
acceptable to the Attorney General." It is also significant that
the General Assembly determined it necessary to address the
representation of elected state officials, as well as employees
having a conflict of interest with the Attorney General's office,
in a separate paragraph in section 2(b), apart from the
provisions governing other state employees generally. The
exclusion of the "cooperate," "consent" and "settlement" language
in section 2(b) indicates that the General Assembly intended to
curtail the Attorney General's influence over how elected state
employees conduct their defense in litigation. Although we
recognize that section 2(b) of the Act states that private
counsel must be "reasonably acceptable to the Attorney General,"
we do not read this phrase as giving the Attorney General the
same right to involve himself in the employee's defense as under
section 2(a). 
 We conclude that, unlike section 2(a) of the Indemnification
Act which explicitly provides otherwise, lawyers appointed as
special Attorneys General under the terms of section 2(b) must
exercise independent judgment in protecting the interests of
their state employee clients, without interference from, or with
regard to the views of, the Attorney General. This requirement
springs from the general duty applied to all attorneys to work
for the best interests of their client, without regard to who may
ultimately be paying their fees. 
 With regard to the Indemnification Act, however, our
agreement with Calder ends at this point. We simply cannot accept
Calder's claim regarding the reasonableness of her Affirmative
Pleadings. 
 Calder invokes an analogy to a popular sports strategy
suggesting that, as in football, the best defense may be the
deployment of a strong offense. She thereby urges us to view her
Affirmative Pleadings as a mere part of her overall defense. Our
review of those pleadings makes plain, however, that her
pleadings are not designed, in any sense, to protect her from
incurring "liability" from the plaintiff's claims. Rather,
Calder's Affirmative Pleadings had the exclusive effect of
injecting new claims into the litigation. 
 The Indemnification Act is designed to reimburse state
employees for their "[c]ourt costs and litigation expenses and
other costs of providing a defense." (Emphasis added.) 5 ILCS
350/2(e)(i)(West 1996). The Indemnification Act speaks repeatedly
of "defending" an action on behalf of state employees, but never
refers to "instituting" or "prosecuting" actions on their behalf.
As we discuss more fully below, the absence of these words in the
Indemnification Act is meaningful. In short, and to employ a
common metaphor, the Indemnification Act provides state employees
with a shield by which they may defend themselves from potential
personal liability, not a sword by which to advance unrelated
claims. 
 If we were to decide this appeal on the briefs and the terms
of the Indemnification Act alone we would be tempted to find that
the Attorney General must compensate Schwartz for his services in
consulting with and "defending" Calder, but that the Attorney
General need not do so with regard to those expenses related to
Calder's Affirmative Pleadings. Our analysis cannot stop,
however, with those arguments. At oral argument assistant
Attorney General Susan Fredrick Rhodes brought to our attention
the appellate court's recent decision in Suburban Cook County
Regional Office of Education v. Cook County Board, 282 Ill. App.
3d 560, 667 N.E.2d 1064 (July 12, 1996)(hereinafter, "Lehman").
In Lehman, the appellate court affirmed the circuit court's
appointment of a special attorney to represent an elected State
official as a plaintiff in litigation against the Cook County
Board. Although conceding that the case is factually similar,
she argued that the Lehman case was distinguishable because the
court in Lehman did not rely upon the Indemnification Act in
rendering its ruling. Attorney Schwartz, arguing for Calder in
response, also raised the recent Lehman decision, but took the
position that Lehman was factually indistinguishable and
represents an alternative basis by which we might affirm the
circuit court's ruling. 
 In Lehman, Dr. Lloyd W. Lehman, an elected State official
acting as Superintendent of the Suburban Cook County Regional
Office of Education, brought suit against the Cook County Board
(the Board). Dr. Lehman claimed in his suit that the Board was in
violation of section 4 of the School Code by its refusal to
adequately fund his office and staff. Prior to bringing his suit,
Dr. Lehman contacted the Cook County State's Attorney and the
Attorney General and sought representation. The State's Attorney
declined to file suit on his behalf and advised Dr. Lehman not to
litigate the issue using private counsel because the State's
Attorney was his legal representative. Lehman, 282 Ill. App. 3d
at 564. The Attorney General apparently did not respond to Dr.
Lehman's request. Lehman, 282 Ill. App. 3d at 568. 
 Undeterred by the State's Attorney's advice, Dr. Lehman
contacted his own attorney who subsequently petitioned the
circuit court to allow him to represent Dr. Lehman's office as a
special State's Attorney. The circuit court agreed to the
appointment of counsel, but determined that Dr. Lehman was
entitled to be represented by a special Attorney General under
the Attorney General Act, as opposed to a special State's
Attorney. The court then appointed Lehman's counsel as a special
Attorney General. 
 The case proceeded in the circuit court which ultimately
ruled against Dr. Lehman's substantive claims. The appellate
court affirmed the circuit court on appeal, noting that the
general requirement of section 4 of the School Code requiring the
County Board to fund regional education offices did not apply to
Dr. Lehman's office in light of a specific statutory exemption.
Lehman, 282 Ill. App. 3d at 563. The court then turned its
attention to the question of Dr. Lehman's representation and the
Attorney General's arguments against the appointment of Lehman's
private counsel as a special Attorney General. 
 We are of the view, made at oral argument, that Calder's
Affirmative Pleadings present the same issue as was presented to
the court in Lehman. The issue in Lehman was "the very
troublesome question of the right to representation of an elected
official when his opinion of the law applicable to his office is
in conflict with the opinion of the lawyer whose statutory duty
is to represent that elected official." Lehman, 282 Ill. App. 3d
at 570. The Lehman case therefore represents controlling
precedent.
 With regard to the appointment of Dr. Lehman's attorney as
special Attorney General, the appellate court in Lehman affirmed
the circuit court, although the court determined that Dr.
Lehman's attorney should have been appointed as a special State's
Attorney (as Dr. Lehman had originally requested). Lehman, 282
Ill. App. 3d at 569-70. The court then determined that once the
State's Attorney was shown to the circuit court's satisfaction to
have an "irreconcilable" conflict of interest in exercising his
statutory duties in favor of Dr. Lehman and the County Board
(Lehman, 282 Ill. App. 3d at 575), the court had authority under
the common law to appoint private counsel so as to abate that
conflict. The same result must follow here. If the circuit court
had the authority to appoint private counsel to act as special
State's Attorney to advance claims on behalf of Dr. Lehman as an
elected official, that same authority must be available to Calder
with regard to her representation by the Attorney General.
 Although we need no further support in reaching this
decision, we note that the Attorney General is a constitutional
officer (Ill. Const. 1970, Article VI, Section 15), charged with
the representation of "the people of the state" (15 ILCS 205/4
(West 1996)). To this end, the Attorney General Act provides that
it is the Attorney General's duty to "institute and prosecute all
actions and proceedings," (emphasis added) as may "be necessary
in the execution of the duties of any state officer." 15 ILCS
205/4 (West 1996). Although the Attorney General has wide
discretion in how he meets this obligation, the duty to advance
the interests of the people of the State is mandatory, not
discretionary, and stands in marked contrast to the obligations
imposed by the Indemnification Act which require only that the
Attorney General "defend" state employees from liability claims. 
 In our view, the supreme court's opinion in Tully
establishes conclusively that some form of litigation was
necessary to protect both Calder's rights to serve out her
elected term and the voters' right to see their elected official
complete the job for which she had been elected. It follows,
albeit with the advantages of hindsight, that when Calder
requested representation to advance her position that the
University Act was unconstitutional, the Attorney General was
under an obligation to see that this position was competently
presented by counsel to the trial court. The fact that the
Attorney General had similar, inconsistent duties toward the
Governor in defending the validity of the University Act is not
an acceptable excuse for his having abandoned Calder and leaving
her without representation. The rules prohibiting an attorney
accepting representations which create a conflict between clients
applies generally to the Attorney General (see Lehman, 282 Ill.
App. 3d at 575, citing In re Vrdolyak, 137 Ill. 2d 407, 560
N.E.2d 840 (1990)), although we recognize that the Attorney
General's office may, in certain cases and with due care,
represent two opposing interests in the same litigation (see
e.g., Environmental Protection Agency v. Pollution Control Board,
69 Ill. 2d 394, 372 N.E.2d 50 (1977)). 
 We conclude the Attorney General in this case should have
offered Calder, an elected official, the representation she
requested in light of her colorable claims that her office was
being unconstitutionally terminated by the University Act, and
then taken whatever affirmative steps were necessary to abate the
conflicts that necessarily resulted from that representation. In
the absence of such affirmative steps by the Attorney General, we
conclude that the circuit court acted within its authority in
appointing attorney Schwartz as a special Attorney General to
represent her interests. 
 We turn our attention briefly to the circuit court's order
requiring the Attorney General to process monthly vouchers in
favor of Schwartz for his services to Calder. The Attorney
General argues that requiring his office to pay Schwartz amounts
to a violation of sovereign immunity and the separation of powers
doctrine in that the Attorney General is an executive officer and
should not subject to such control by the judicial branch. We
summarily reject this argument. 
 It is well established that a circuit court is endowed with
broad discretion to fashion such remedies or to grant such relief
as equity may require to remedy a wrong. Orr v. Edgar, 283 Ill.
App. 3d 1088, 670 N.E.2d 1243 (1996); Daniels v. Anderson, 162
Ill. 2d 47, 65, 642 N.E.2d 128 (1994). We have concluded that the
Attorney General had a clear obligation to represent Calder in
this litigation, but that he wrongly refused to do so. Even
though the circuit court relied upon neither its common law
authority nor the as-yet unwritten opinion in Lehman, we conclude
the circuit court's order requiring Schwart'z fees to be paid by
the Attorney General was an appropriate remedy under the
circumstances. Schwartz's representation of Calder in this case
had the potential of being of crucial importance to the
administration of justice. See Orenic v. Illinois State Labor
Relations Board, 127 Ill. 2d 453, 468, 537 N.E.2d 784 (1989). In
addition, the court's order was consistent with the judicial
branch's role of supervising those attorneys who practice before
us, a class which includes the Attorney General. See Lehman, 282
Ill. App. 3d at 575-76; County of Kane v. Carlson, 116 Ill. 2d
186, 206-208, 507 N.E.2d 482 (1987). 
 In sum, we re-affirm the ruling in Lehman. To the extent
that the Attorney General has a conflict in the representation of
an elected official which the Attorney General is unable or
unwilling to resolve, the circuit court has the authority to
remove that conflict through the appointment of a special
attorney, as well as the corresponding authority to see that that
attorney gets paid a reasonable fee for his or her services. 
 For the foregoing reasons, the stay imposed upon the circuit
court's order providing for the payment of trustee Judith Ann
Calder's legal fees to attorney Lee J. Schwartz is vacated. The
matter is remanded to the circuit court for further proceedings
consistent with this opinion. 
 Affirmed and remanded.
 McNAMARA, J., and RAKOWSKI, J., concurring.