FIRST DISTRICT
SIXTH DIVISION
APRIL 29, 2011

No. 1-10-1152

|  |  |  |
|---|---|---|
| JOSEPH M. FERGUSON, as Inspector General of the City of Chicago, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09 CH 43287 |
| MARA S. GEORGES, as Corporation Counsel of the City of Chicago, | ) ) ) | Honorable Nancy J. Arnold, Judge Presiding. |
| Defendant-Appellee. | ) ) | |

JUSTICE ROBERT E. GORDON delivered the judgment of the court, with opinion.
Justice McBride concurred in the judgment and opinion.
Justice Cahill dissented, with opinion.

**OPINION**

This matter is before us to determine whether defendant, Mara Georges, in her official capacity as the corporation counsel of the City of Chicago (Corporation Counsel), is required to produce unredacted copies of documents that she claims are shielded by the attorney-client privilege to Joseph Ferguson, in his official capacity as inspector general of the City of Chicago (Inspector General).  After the Inspector General served the Corporation Counsel with a subpoena for the documents and the Corporation Counsel refused to provide them, the Inspector General retained private counsel and brought suit against the Corporation Counsel to compel production of the unredacted documents pursuant to the subpoena.  The Corporation Counsel filed a motion to dismiss pursuant to both sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2008)).  The trial court granted the

No. 1-10-1152

Corporation Counsel's motion to dismiss, finding that the Inspector General did not have the authority to retain private counsel and that the documents were protected by the attorney-client privilege. The Inspector General appealed. For the reasons that follow, we reverse.

BACKGROUND

This case revolves in large part around the powers and duties of the Inspector General and the Corporation Counsel. Therefore, a brief discussion of their respective offices is helpful. The Office of Inspector General (IGO) is a municipal office created by chapter 2-56 of the Chicago Municipal Code (Municipal Code). Chicago Municipal Code §2-56-010 *et seq.* (added Oct. 4, 1989). The duties of the IGO include "investigat[ing] the performance of governmental officers, employees, functions and programs," either in response to a complaint or on the Inspector General's own initiative, in order to "detect and prevent misconduct, inefficiency and waste within the programs and operations of the city government." Chicago Municipal Code §2-56-030 (added Oct. 4, 1989).

The powers and duties of the Inspector General extend to the conduct of "all elected and appointed officers of the city government in the performance of their official duties" and "all employees of the city government in the performance of their official duties," except for members of the city council and their employees. Chicago Municipal Code §2-56-050 (added Oct. 4, 1989). The powers and duties of the Inspector General also extend to the conduct of "all contractors and subcontractors in the providing of goods or services to the city pursuant to a contract"; "business entities in seeking contracts or certificates of eligibility for city contracts"; and "persons seeking certification of eligibility for participation in any city program." Chicago

2

No. 1-10-1152

Municipal Code §2-56-050.

Every "officer, employee, department, agency, contractor, subcontractor and licensee of the city" has a duty to cooperate with the Inspector General in any investigation or hearing undertaken pursuant to the Municipal Code. Chicago Municipal Code §2-56-090 (added Oct. 4, 1989). The investigatory files and reports of the IGO are confidential and cannot be released to any person or agency other than the United States Attorney, the Illinois Attorney General or the State's Attorney of Cook County.

The powers of the IGO include the power "[t]o issue subpoenas to compel the attendance of witnesses for purposes of examination and the production of documents and other items for inspection and/or duplication." Chicago Municipal Code §2-56-030. Once the Inspector General issues a subpoena, the person to whom the subpoena is directed may file an objection to the subpoena. "For seven days after receipt of a timely objection to a subpoena, the inspector general shall take no action to enforce the subpoena or to initiate prosecution of the person to whom the subpoena is directed." Chicago Municipal Code §2-56-040 (added Oct. 4, 1989).

The office of the Corporation Counsel is created by section 2-60-020 of the Municipal Code. Chicago Municipal Code §2-60-020 (added Sept. 5, 2007). The Corporation Counsel is the "head of the department of law of the city." Chicago Municipal Code §2-60-020. The duties of the Corporation Counsel include "[s]uperintend[ing] and *** conduct[ing] all the law business of the city." Chicago Municipal Code §2-60-020. The Corporation Counsel is also required to "[a]ppear for and protect the rights and interests of the city in all actions, suits and proceedings brought by or against it or any city officer, board or department" or brought against an

3

administrative law officer and is responsible for defending "any member, officer or employee of the board of health, police department or fire department" who is sued personally for damages based on his or her official duties. Chicago Municipal Code §2-60-020.

In the case at bar, in January 2007, the IGO began investigating how a former City of Chicago (City) employee was awarded a sole-source contract seemingly in violation of the City's ethics and contracting rules. According to the Inspector General's complaint, " '[s]ole-source' contracts are contracts awarded without a competitive process. Non-competitive procurements are allowed ***, but only under very limited circumstances following a rigorous internal process. The IGO's investigation to date suggests that the City's process for awarding the contract under investigation was manipulated by City employees." The investigation involved current and former City employees acting in their capacity as City employees. During the course of the investigation, the IGO interviewed 18 people, requested and received documents from 5 City departments, and reviewed thousands of documents.

On August 15, 2008, as part of its investigation, the IGO sent a written request to the City's law department for all documents relevant to the award of the contract to the former employee. The law department provided some documents, but redacted others on the basis of attorney-client privilege or the work product doctrine. The redacted documents included "(i) communications among Law Department attorneys; (ii) communications between Law Department attorneys and other City employees; (iii) notes by two Law Department attorneys regarding conversations with City employees; and (iv) charts and notes by one Law Department attorney — all regarding the matter *** under investigation." The IGO told the law department

that it did not believe that the City could properly shield the documents using either the attorney-client privilege or the work product doctrine.

On October 8, 2009, the IGO served a subpoena on the Corporation Counsel as head of the law department for the documents requested. Along with the subpoena, the IGO included a letter summarizing the legal arguments it believed supported its position, as well as a suggested memorandum of understanding concerning the way in which the documents should be handled. On October 15, 2009, the Corporation Counsel made an objection to the subpoena. On October 21, 2009, the IGO responded to the Corporation Counsel's objection with a letter stating that the IGO disagreed with the grounds of the objection. The Corporation Counsel did not comply with the subpoena.

On November 4, 2009, through private counsel, the Inspector General[1] in his official capacity filed suit against the Corporation Counsel in her official capacity, seeking a declaratory judgment, a writ of *mandamus*, and enforcement of the subpoena to compel the Corporation Counsel to produce unredacted copies of the documents requested by the subpoena. The Corporation Counsel filed a motion to dismiss the complaint pursuant to sections 2-619 and 2-615 of the Code. The Corporation Counsel argued that the complaint should be dismissed pursuant to section 2-619 because (1) the trial court lacked jurisdiction since the Inspector

---

[1] The complaint was filed by First Deputy Inspector General Mary E. Hodge. At the time, the position of Inspector General was vacant, as the current Inspector General had not yet been approved by the city council, so Hodge was the head of the IGO. After the current Inspector General was confirmed by the city council, he was substituted as plaintiff in December 2009.

General lacked the capacity to sue, (2) the trial court should not entertain a dispute between two parties within the same governmental entity, and (3) the documents were protected by the attorney-client privilege. The Corporation Counsel also argued that the complaint should be dismissed pursuant to section 2-615 because the complaint did not adequately state a cause of action for declaratory judgment or mandamus.

A hearing on the Corporation Counsel's motion was held on April 21, 2010. After hearing the parties' arguments, the trial court found that the Inspector General did not have the authority to engage its own attorney and that the attorney-client privilege was available to the Corporation Counsel. The trial court entered an order dismissing the Inspector General's complaint with prejudice. The Inspector General timely appealed.

## ANALYSIS

On appeal, the Inspector General raises two issues: (1) the trial court erred in finding that the attorney-client privilege applied to shield the subpoenaed documents and (2) the trial court erred in finding that the Inspector General did not have the authority to retain a private attorney. The Corporation Counsel also argues that we lack jurisdiction over the instant matter because it is an intragovernmental dispute and therefore nonjusticiable. We address the issues concerning jurisdiction and the Inspector General's capacity to sue first.

### *Intragovernmental Dispute*

The Corporation Counsel first argues that we lack jurisdiction over the instant matter because "this is effectively a suit by the City against the City." Whether the instant issue is justiciable presents an issue of law, which we review *de novo*. *Morr-Fitz, Inc. v. Blagojevich*,

231 Ill. 2d 474, 488 (2008). The Corporation Counsel cites to *Tanner v. Solomon*, 58 Ill. App. 2d 134 (1965), in support of the argument that the instant suit is nonjusticiable. However, *Tanner* involved a very different situation than the one at issue here. In *Tanner*, one member of the Addison Board of Fire and Police Commissioners brought suit against the two other board members based on a dispute over candidates for the police department. *Tanner*, 58 Ill. App. 2d at 135-36. In finding that the board member was unable to bring suit against the other board members, the court first noted that there was case law holding that one agency of government could bring suit against another governmental agency to resolve a dispute. *Tanner*, 58 Ill. App. 2d at 137. However, the court pointed out that in the case before it, "one member of a governmental body is suing the other members *of that same body*." (Emphasis added.) *Tanner*, 58 Ill. App. 2d at 137. The court concluded that "it would not be a salutary thing for the courts to step in and resolve these disputes on the application of every minority member whose opinions *** have been over-ridden by the majority." *Tanner*, 58 Ill. App. 2d at 138.

In the case at bar, we do not have one individual suing another individual from the same body but instead have the head of one municipal office suing the head of a different municipal office. While they are both departments within the same municipal corporation, we have considered analogous situations in the past and are willing to do so again. See, *e.g.*, *Burnette v. Stroger*, 389 Ill. App. 3d 321 (2009) (Cook County public defender brought suit against president of Cook County board of commissioners); *Read v. Sheahan*, 359 Ill. App. 3d 89 (2005) (members of Cook County board of corrections brought suit against Cook County sheriff); *Sampson v. Graves*, 304 Ill. App. 3d 961 (1999) (City of Harvey aldermen brought suit against City of Harvey

7

mayor). Accordingly, we find that the dispute here is justiciable.

*Capacity to Sue*

In granting the Corporation Counsel's motion to dismiss, the trial court found that the Inspector General lacked the capacity to sue the Corporation Counsel. The Inspector General argues that the trial court erred in granting the motion to dismiss on that basis. We review the trial court's grant of the motion to dismiss *de novo*. *Progressive Insurance Co. v. Williams*, 379 Ill. App. 3d 541, 544 (2008). As a preliminary matter, we note that the issue before us is the narrow question of whether the Inspector General was entitled to hire a private attorney to sue to enforce the subpoena served on the Corporation Counsel. We do not purport to resolve any broader questions involving a right of the Inspector General to hire an attorney in any other circumstance or the procedure to be followed in the event the Corporation Counsel has a conflict of interest.

In the case at bar, the trial court's decision was based in part on the Illinois Supreme Court case of *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394 (1977) (*EPA*). That case concerned a request by the Illinois Pollution Control Board to be represented by counsel other than the Attorney General in certain situations. *EPA*, 69 Ill. 2d at 397. The court noted that the Attorney General was the chief legal officer of the state of Illinois and had the duty of acting as the legal representative of state agencies. *EPA*, 69 Ill. 2d at 399. The board pointed to a statutory provision providing that private counsel could be appointed where the Attorney General was "interested" and argued that the Attorney General was interested in that case. *EPA*, 69 Ill. 2d at 400. However, the court held that the Attorney General was only

8

"interested" under the statute in two situations: when the Attorney General was involved with the case as a private individual or when the Attorney General was an actual party to the action. *EPA*, 69 Ill. 2d at 400-01. The court concluded: "It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies. *** To allow the numerous State agencies the liberty to employ private counsel without the approval of the Attorney General would be to invite chaos into the area of legal representation of the State." *EPA*, 69 Ill. 2d at 401-02.

In the case at bar, the Municipal Code does not include an analogous provision allowing for appointment of private counsel if the Corporation Counsel is "interested." If there was, this would be a simple case, since the Corporation Counsel is a party to the litigation. Accordingly, we examine the provisions of the Municipal Code to determine if there is a source of authority for the Inspector General's suit.

The Municipal Code provides the IGO with the power to investigate and "[t]o issue subpoenas to compel the attendance of witnesses for purposes of examination and the production of documents and other items for inspection and/or duplication." Chicago Municipal Code §2-56-030. The courts should not frustrate the very purpose for which the office of Inspector General was created. Once the Inspector General issues a subpoena, the person to whom the subpoena is directed may file an objection to the subpoena. "For seven days after receipt of a timely objection to a subpoena, the inspector general shall take no action to enforce the subpoena or to initiate prosecution of the person to whom the subpoena is directed." Chicago Municipal Code §2-56-040.

The parties disagree as to the meaning of section 2-56-040. The Inspector General argues that it must have the power to enforce the subpoena because the ordinance provides that for seven days, "the inspector general *shall take no action to enforce the subpoena*." (Emphasis added.) Chicago Municipal Code §2-56-040. It claims that the language of the ordinance means that after seven days, the Inspector General *may* take action to enforce the subpoena. The Corporation Counsel, on the other hand, argues that the language does not mean that the "action to enforce" is taken by the Inspector General. Instead, she claims that the Corporation Counsel has control over any action to enforce the subpoena. If that would be the case then the IGO could never investigate the Corporation Counsel because that office would be immune from investigation since they would be the only entity to enforce the subpoena.

The dissent reads the plain language of the ordinance to require a dispute over the enforcement of a subpoena to be ultimately determined by the mayor. However, the plain language of the ordinance does not address the procedure to be followed in the case of such a dispute. The only references to a dispute are the instruction that for seven days following an objection, "the inspector general shall take no action to enforce the subpoena" and that during that seven days, the Inspector General "may attempt to resolve the objection through negotiation with the person to whom the subpoena is directed." Chicago Municipal Code §2-56-040. The ordinance does not direct the Inspector General's actions in the case an attempt to resolve the dispute fails.

While there is no case discussing the Inspector General's subpoena power, we find *Department of Public Aid v. Kessler*, 72 Ill. App. 3d 802 (1979), to be instructive. In *Kessler*,

the Illinois Department of Public Aid (IDPA) served a subpoena on the defendant and, when the defendant did not comply, filed an action in the circuit court to enforce it. *Kessler*, 72 Ill. App. 3d at 803. The defendant argued that the IDPA did not have the power to enforce the subpoena in the circuit court because there was no statutory provision providing it that power. *Kessler*, 72 Ill. App. 3d at 804. The court held that despite the fact that there were no "standards and procedures" in the statute granting the IDPA the power to compel the production of books and papers by subpoena, the statute did not bar the IDPA from attempting to enforce the subpoena in court because the absence was not significant "inasmuch as the circuit courts, rather than the agency itself, are the entities with the authority to do the enforcing." *Kessler*, 72 Ill. App. 3d at 804.

The Corporation Counsel is correct when she notes that *Kessler* did not address the question of whether the agency or the Attorney General was the proper party for bringing such an action, which is an issue in this case. However, *Kessler* is instructive in that the court allowed the agency to bring an action to enforce the subpoena despite the lack of explicit statutory authority. Here, there is authority for the Inspector General to issue a subpoena, but there is no explicit authority for the IGO to enforce that subpoena. However, if the Inspector General has the authority to issue a subpoena, it certainly can be reasonably inferred that the authority to issue includes the authority to enforce. Like *Kessler*, despite the lack of procedures concerning enforcement of the subpoena, we find that the Inspector General may enforce the subpoena through recourse in the circuit court.

The dissent states that section 2-4-030 of the Municipal Code "provides that where the

legislation does not explicitly provide for enforcement, the mayor is the enforcement officer." However, section 2-4-030 merely gives the mayor the *authority* to act, or to designate the officer who shall act, in the case where the ordinance fails to specify the officer who is charged with the duty of enforcement. It does not provide that the mayor is the *sole* enforcement officer.

Additionally, in the ordinance here, there is a reference to the enforcement of the subpoena in the clause that prohibits the Inspector General from taking any action to enforce the subpoena for seven days following an objection. We agree with the Inspector General that the most natural reading of this clause indicates that after seven days, the Inspector General may take some sort of enforcement action. In most cases, that could include the Corporation Counsel's involvement; however, in this case, it is the Corporation Counsel who is objecting to the subpoena. It would be unrealistic and nonproductive for the Inspector General to request that the Corporation Counsel take action to enforce a subpoena against her own office. Further, the ordinance provides that the "the inspector general shall take no action to enforce the subpoena *or to initiate prosecution of the person to whom the subpoena is directed.*" (Emphasis added.) Chicago Municipal Code §2-56-040. Once again, this implies that the Inspector General has the authority to take some sort of action concerning the subpoena. Accordingly, we find, at least in the limited situation where the Corporation Counsel is served with a subpoena by the Inspector General and objects to its enforcement, that the Inspector General may seek to enforce the subpoena in the circuit court by hiring its own counsel.

We find support for our conclusion in our decision in *Burnette*, 389 Ill. App. 3d 321. In that case, the Cook County public defender brought suit against the president of the Cook County

board of commissioners after the board approved a budget amendment that included laying off personnel in the public defender's office. *Burnette*, 389 Ill. App. 3d at 322. One issue in the case was whether the public defender was an entity capable of bringing suit; the president argued that the public defender was not, since there was no statute explicitly providing that authority. *Burnette*, 389 Ill. App. 3d at 327-28. After noting that the statutory scheme did contemplate that the public defender was an entity capable of suit, we pointed out that "it would make no sense to create an entity that could not even defend its right to exist" and that "our supreme court has repeatedly permitted public defenders to sue, in order to protect and define the scope of their statutory authority." *Burnette*, 389 Ill. App. 3d at 328.

The dissent takes issue with our reliance on *Burnette*, noting that *Burnette* involved the recognition of the unique role of public defenders as independent agencies within the criminal justice system and stating that no such pronouncement has been made in the case of Inspectors General. While, as the dissent notes, this is a case of first impression, we find *Burnette* to be instructive, as is *Kessler*, because of the nature of the IGO. The Inspector General occupies a unique role within the City of Chicago's government. The Inspector General is entrusted with "investigat[ing] the performance of governmental officers, employees, functions and programs," either in response to a complaint or on the Inspector General's own initiative, in order to "detect and prevent misconduct, inefficiency and waste within the programs and operations of the city government." Chicago Municipal Code §2-56-030. As such, every "officer, employee, department, agency, contractor, subcontractor and licensee of the city" has a duty to cooperate with the Inspector General in any investigation or hearing undertaken pursuant to the Municipal

13

No. 1-10-1152

Code. Chicago Municipal Code §2-56-090. In recognition of this unique role, the Inspector General is appointed for a fixed term and can only be removed from the office for cause. Chicago Municipal Code §2-56-020, §2-56-130.

In the case at bar, the Inspector General's investigation is being frustrated by the Corporation Counsel's refusal to comply with a subpoena.[2] Without the ability to bring an action to enforce the subpoena, the Inspector General has no means to challenge the Corporation Counsel's refusal other than asking the mayor to resolve the dispute. The ordinance creating the IGO could not have been designed to tie the Inspector General's hands in this way because in doing so its investigative process would be meaningless. The IGO was created "to detect and prevent misconduct, inefficiency and waste within the programs and operations of the city government." Chicago Municipal Code §2-56-030. To achieve its goals, the Inspector General must be allowed to bring an action in the circuit court to enforce a subpoena against the Corporation Counsel to further its investigative duties.

The trial court found that the Inspector General should have approached the Corporation Counsel, at which point "it would be up to her to determine that there was a conflict." If there was a conflict, "which there obviously is," the Corporation Counsel would have needed to either seek authorization from the city council to engage special counsel or ask the trial court to appoint special counsel. We do not agree with this procedure and find it to frustrate the independent

_____

[2] Whether the refusal to comply with the subpoena was proper is discussed below. For the purposes of the discussion here, it is only relevant that the Corporation Counsel refused to comply with the subpoena.

14

investigative duties of the Inspector General. We further find that the Inspector General followed proper procedures for the appointment of special counsel.

As we found earlier, the Inspector General has the authority to bring suit against the Corporation Counsel in this case. With such a clear conflict of interest, it would be exalting form over substance to require the Inspector General to ask the Corporation Counsel to determine whether a conflict of interest existed. Moreover, the Inspector General informed the trial court that it had the discretion to appoint private counsel to represent him. It was not necessary for the request to come from the Corporation Counsel. See *Suburban Cook County Regional Office of Education v. Cook County Board*, 282 Ill. App. 3d 560, 575 (1996) (finding that a proper procedure for appointment of a special State's Attorney in the case of conflict between officials the State's Attorney is obligated to represent "would require the invocation of the court's discretion by either the State's Attorney *or the officials*" (emphasis added)). The Corporation Counsel notes that the Inspector General merely mentioned the court's authority in its brief and at the hearing on the motion to dismiss, claiming that the issue was not properly raised and should be forfeited. However, we choose to consider the issue. *Flynn v. Ryan*, 199 Ill. 2d 430, 438 n.1 (2002) (waiver is an admonition to the parties, not a limitation upon the powers of courts of review). Accordingly, we find that the trial court's grant of the Corporation Counsel's motion to dismiss on this basis must be reversed.

*Attorney-Client Privilege*

Since we have determined that we have jurisdiction over the instant matter and the Inspector General was within its authority to bring suit against the Corporation Counsel, we

consider the issue of whether the trial court erred in finding that the Corporation Counsel could assert the attorney-client privilege to shield documents from the Inspector General. Again, our review of the trial court's dismissal under section 2-619 is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).

The purpose of the attorney-client privilege is "to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 117-18 (1982). However, because the privilege poses a bar to the discovery of relevant and material facts, it is an exception to the general duty to disclose and is interpreted narrowly. *Consolidation Coal*, 89 Ill. 2d at 118.

As a general matter, the attorney-client privilege is available to a municipal corporation. *In re Information to Discipline Certain Attorneys of the Sanitary District of Chicago*, 351 Ill. 206, 268 (1932). However, there has been little case law as to the availability of the privilege or its scope in the context of an action between two government agencies. The Inspector General asks us to impose a rule that the attorney-client privilege is not available to City attorneys in an official IGO investigation into the City's misconduct. The Corporation Counsel advocates for the opposite rule: that the privilege applies to "communications between governmental entities and governmental counsel." However, we cannot accept either party's argument here.

In the case at bar, the Corporation Counsel has not shown that the documents at issue are covered by the attorney-client privilege. As the party seeking to shield the documents, the Corporation Counsel has the burden of establishing that "the communication originated in a

confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Consolidation Coal*, 89 Ill. 2d at 119. However, we cannot find any evidence in the record that the Corporation Counsel made such a showing before the trial court and there is insufficient information in the record concerning the documents at issue for us to review the trial court's finding of privilege.

There are no details as to the creators of the documents, their recipients, or the contents of any of the documents. There are also no details concerning the titles, duties, or authority of any of the individuals involved with the documents. The only information in the record is a statement in the Inspector General's complaint indicating that the redacted documents included "(i) communications among Law Department attorneys; (ii) communications between Law Department attorneys and other City employees; (iii) notes by two Law Department attorneys regarding conversations with City employees; and (iv) charts and notes by one Law Department attorney — all regarding the matter *** under investigation"; there was also a redacted copy of the privilege log attached as an exhibit to the complaint. Moreover, there is no indication in the record that the trial court reviewed unredacted copies of the documents *in camera* to determine whether they were covered by the attorney-client privilege. Without this information, we cannot review the propriety of the trial court's finding. Accordingly, we remand the case to the trial court for the limited purpose of conducting an *in camera* inspection of the unredacted documents and making factual findings consistent with the concerns outlined above.

## CONCLUSION

We find that the Inspector General had the authority to bring the instant suit against the

No. 1-10-1152

Corporation Counsel. Additionally, we find that we lack sufficient information to determine whether the subpoenaed documents are shielded by the attorney-client privilege and remand the case to the trial court for that limited purpose.

Reversed and remanded with instructions.

No. 1-10-1152

JUSTICE CAHILL dissenting:

I sympathize with the difficulty the majority faced in this case: as a matter of first impression, what to do with an attempt by a city officer to bring a declaratory judgment action against a fellow city officer who just happens to be the attorney for the city. The majority concludes that the enabling ordinance for the Inspector General of the city, while not explicitly granting him power to seek the aid of the courts to enforce his subpoenas, must of necessity, grant him that power by implication. I cannot agree and must dissent.

As I read the Inspector General's enabling ordinance, his subpoena power is administrative, and the scope is circumscribed by the plain language of the ordinance: a dispute over enforcement ultimately lands on the desk of the mayor, who must decide how to resolve it. To grant to the Inspector General the power to bypass the city's attorney and the mayor himself and seek a declaratory judgment on the nature and extent of his power is to grant to a city officer appointed by the mayor powers the city council did not (and probably could not) delegate. The municipal code provides that where the legislation does not explicitly provide for enforcement, the mayor is the enforcement officer. Chicago Municipal Code §2–4–030 (1990).

The case cited by the majority in support of its conclusion, *Burnette v. Stroger*, 389 Ill. App. 3d 321, 905 N.E.2d 939 (2009), in which the Cook County public defender was allowed to sue the Board of Commissioners, is not persuasive. *Burnette* relied on supreme court opinions that recognized the unique role of public defenders as independent agencies within the criminal justice system. No such pronouncement has been made in the case of Inspectors General, who remain, at the city, county and state level, offices within units of government. Although their

19

powers are broad within the unit of which they are a part, including the power to share investigation materials with law enforcement agencies, Inspectors General do not have a legal existence independent of the unit of government of which they are a part.

I would affirm the dismissal of this action on the grounds that the Inspector General of the City of Chicago is not a legal entity capable of bringing suit.