# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### Ferguson v. Patton, 2013 IL 112488

---

| | |
|---|---|
| Caption in Supreme Court: | JOSEPH M. FERGUSON, Inspector General of the City of Chicago, Appellee, v. STEPHEN R. PATTON, Corporation Counsel of the City of Chicago, Appellant. |
| Docket No. | 112488 |
| Filed | March 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Municipal Code gives authority to initiate legal proceedings on behalf of a city only to its corporation counsel; and a municipal inspector general to whom city ordinance had given authority to issue subpoenas nevertheless lacked authority to retain private counsel and bring an action in circuit court against the city's law department seeking production of documents. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Appellate court judgment reversed in part and vacated in part.<br>Circuit court judgment affirmed in part and vacated in part. |

Counsel on
Appeal

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth
Solomon, Myriam Zreczny Kasper and J. Mark Powell, of counsel), for
appellant.

Alexander Polikoff, of Chicago, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, and Garman
concurred in the judgment and opinion.

Justices Burke and Theis took no part in the decision.

**OPINION**

¶ 1    The issue in this case is whether the Inspector General of the City of Chicago may retain private counsel to bring an action in circuit court to compel the City of Chicago's Corporation Counsel to produce unredacted copies of documents sought by the Inspector General as part of an official investigation into municipal corruption.[1] The circuit court of Cook County answered that question in the negative, dismissing the Inspector General's action on the grounds that the Inspector General lacked authority to retain private counsel to bring suit and, in the alternative, because it agreed with the Corporation Counsel that the redacted documents were protected by the attorney-client privilege. The appellate court reversed and remanded, with one justice dissenting. 409 Ill. App. 3d 956. For the reasons that follow, we now reverse in part and vacate in part the appellate court's judgment and affirm in part and vacate in part the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3    The office of Inspector General of the City of Chicago is a municipal office created by chapter 2-56 of the Chicago Municipal Code (Chicago Municipal Code § 2-56-010 *et seq.* (added Oct. 4, 1989)). The Inspector General is appointed by the mayor of Chicago with approval of the city council for a four-year term. Chicago Municipal Code § 2-56-020 (added Oct. 4, 1989). Among the powers and duties of his office are:

---

[1]When this litigation commenced, Mara S. Georges served as Corporation Counsel. Ms. Georges was subsequently succeeded in office by Stephen Patton. Mr. Patton has now been substituted as a party by order of this Court. Because Ms. Georges and Mr. Patton are involved in these proceedings solely in their official capacities, this opinion will not differentiate between them when setting out the facts and discussing the legal arguments in the case.

"(a) To receive and register complaints and information concerning misconduct, inefficiency and waste within the city government;

(b) To investigate the performance of governmental officers, employees, functions and programs, either in response to complaint or on the inspector general's own initiative, in order to detect and prevent misconduct, inefficiency and waste within the programs and operations of the city government;

(c) To promote economy, efficiency, effectiveness and integrity in the administration of the programs and operations of the city government by reviewing programs, identifying any inefficiencies, waste and potential for misconduct therein, and recommending to the mayor and the city council policies and methods for the elimination of inefficiencies and waste, and the prevention of misconduct;

(d) To report to the mayor concerning results of investigations undertaken by the office of inspector general;

(e) To request information related to an investigation from any employee, officer, agent or licensee of the city;

(f) To conduct public hearings, at his discretion, in the course of an investigation hereunder;

(g) To administer oaths and to examine witnesses under oath;

(h) To issue subpoenas to compel the attendance of witnesses for purposes of examination and the production of documents and other items for inspection and/or duplication. Issuance of subpoenas shall be subject to the restrictions contained in Section 2-56-040; [and]

(i) To promulgate rules and regulations for the conduct of investigations and public hearings consistent with the requirements of due process of law and equal protection under the law." Chicago Municipal Code § 2-56-030 (added Oct. 4, 1989).

¶ 4 In accordance with subsection (b) of this ordinance, the Inspector General initiated an investigation in January of 2007 regarding possible improprieties with respect to how a former City employee had been awarded a City contract without going through the normal competitive process. During the course of the investigation, the Inspector General submitted a written request to the City's law department (the Law Department) for all documents relevant to the awarding of the contract. The Inspector General's authority to make this request was based on section 2-56-030(e) of the Municipal Code (Chicago Municipal Code § 2-56-030(e) (added Oct. 4, 1989)), which we have just quoted, and has not been questioned.

¶ 5 Section 2-56-090 of the Municipal Code (Chicago Municipal Code § 2-56-090 (added Oct. 4, 1989)), provides:

"It shall be the duty of every officer, employee, department, agency, contractor, subcontractor and licensee of the city, and every applicant for certification of eligibility for a city contract or program, to cooperate with the inspector general in any investigation or hearing undertaken pursuant to this chapter. Each department's premises, equipment, personnel, books, records and papers shall be made available

-3-

as soon as practicable to the inspector general. Every city contract and every bid, proposal, application or solicitation for a city contract, and every application for certification of eligibility for a city contract or program shall contain a statement that the person understands and will abide by all provisions of this chapter."

Similarly, Executive Order No. 2005-2 issued by the mayor of the City provides, in relevant part, that

"[i]t is the duty of every employee and department [of the City] to cooperate with the Inspector General in any investigation or hearing. Each department's premises, equipment, personnel, books, records and papers shall be made readily available to the Inspector General."

¶ 6 In meeting its obligations under the foregoing provisions, the Law Department provided the requested documents. However, only some of those documents were disclosed in full. Others were redacted based on claims of attorney-client privilege or pursuant to the work product doctrine.

¶ 7 The redacted documents were listed by the Law Department on a privilege log. The documents have been described generally as "(i) communications among Law Department attorneys; (ii) communications between Law Department attorneys and other City employees; (iii) notes by two Law Department attorneys regarding conversations with City employees; and (iv) charts and notes by one Law Department attorney—all regarding the matter *** under investigation."

¶ 8 The Inspector General's office did not believe that the Law Department was entitled to limit access to the documents' full contents based on either attorney-client privilege or the work product doctrine, and it conveyed that view to the Law Department. When the Law Department refused to reconsider its position, the Inspector General issued a subpoena directing the City's Corporation Counsel, who heads the Law Department, to produce the documents in question. Issuance of the subpoena was accomplished under authority of section 2-56-030(h) of the Municipal Code (Chicago Municipal Code § 2-56-030(h) (added Oct. 4, 1989)) and in the manner set forth in section 2-56-040 of the Code (Chicago Municipal Code § 2-56-040 (added Oct. 4, 1989)). The subpoena was accompanied by a letter from the Inspector General explaining in detail why he did not believe the Law Department's claims of attorney-client privilege and work product to be meritorious under the law.

¶ 9 The Corporation Counsel submitted a timely written objection to the Inspector General's subpoena. That objection triggered a provision of section 2-56-040 of the Municipal Code which states that

"[f]or seven days after receipt of a timely objection to a subpoena, the inspector general shall take no action to enforce the subpoena or to initiate prosecution of the person to whom the subpoena is directed. During this seven-day period, the inspector general shall consider the grounds for the objection and may attempt to resolve the objection through negotiation with the person to whom the subpoena is directed." Chicago Municipal Code § 2-56-040 (added Oct. 4, 1989).

¶ 10 When the requisite period passed without resolution of the dispute, the Inspector General

-4-

retained private lawyers to bring this cause of action against the Corporation Counsel in the circuit court of Cook County.[2] The Inspector General's complaint was in three counts. Count I requested a declaratory judgment that the Corporation Counsel has a duty to cooperate with the Inspector General and was not entitled to withhold or redact the requested documents based on attorney-client privilege or the work product doctrine. Count II sought a writ of *mandamus* to compel the Corporation Counsel to comply with the subpoena "by producing unredacted copies of any and all subpoenaed materials to the [Inspector General] within 7 days." Count III sought the same relief, but through direct enforcement of the subpoena rather than *mandamus*.

¶ 11    The Corporation Counsel moved to dismiss the Inspector General's cause of action pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)) on the following grounds: (1) that the Inspector General lacked capacity to sue and the circuit court had no jurisdiction over the dispute, (2) that the court should refrain from entertaining disputes between two parties which are part of the same governmental entity, and (3) that municipal ordinances do not require disclosure of materials protected by attorney-client privilege or where the disclosure would violate supreme court rules. In the same combined motion (see 735 ILCS 5/2-619.1 (West 2010)), the Corporation Counsel challenged the sufficiency of the Inspector General's pleadings pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), arguing that the complaint failed to adequately plead a cause of action for declaratory judgment or mandamus.

¶ 12    After the parties briefed the issues, a hearing was held on the Corporation Counsel's motion. At the conclusion of that hearing, the circuit court opined that the Inspector General lacked authority to retain counsel to bring the litigation and that the decision to secure outside counsel to represent the Inspector General with respect to the subpoena was a matter which should have been left to the Corporation Counsel in his capacity as attorney for the city. The circuit court then went on to address the merits of the dispute and concluded that the Inspector General's office was not entitled to the materials it requested because they were protected by attorney client privilege. The circuit court therefore granted the Corporation Counsel's motion and dismissed the Inspector General's cause of action with prejudice.

¶ 13    A divided appellate court reversed and remanded for further proceedings. 409 Ill. App. 3d 956. Before reaching the Inspector General's arguments, the appellate court majority first rejected an argument advanced by the Corporation Counsel that the dispute presented a nonjusticiable matter which the circuit court had no jurisdiction to even consider. Distinguishing various cases cited by the Corporation Counsel, the appellate court held that this action, which was brought by the head of one municipal department against the head of a different municipal department, did present a matter appropriate for resolution by the courts. 409 Ill. App. 3d at 960-61.

¶ 14    Turning then to the merits, the appellate court identified the issue before it as "the narrow question of whether the Inspector General was entitled to hire a private attorney to sue to

---

[2]The record indicates that the private lawyers retained by the Inspector General are providing their services *pro bono*.

enforce the subpoena served on the Corporation Counsel." 409 Ill. App. 3d at 961. Examining the ordinances governing the Inspector General's powers and responsibilities, the appellate court concluded that while those ordinances did not explicitly confer on the Inspector General's office the authority to hire counsel to enforce subpoenas in circuit court, such authority could reasonably be inferred from the ordinance provisions authorizing it to issue subpoenas and requiring it to take no action to enforce the subpoena or to initiate prosecution of the person to whom the subpoena is directed for a specified period where written objections to the subpoena have been made (see Chicago Municipal Code § 2-56-040 (added Oct. 4, 1989)). 409 Ill. App. 3d at 962-64.

¶ 15    The appellate court further reasoned that permitting the Inspector General to bring an action in circuit court to enforce a subpoena against the Corporation Counsel was necessary to enable the Inspector General to accomplish the purposes for which his office was established, namely, "to detect and prevent misconduct, inefficiency and waste within the programs and operations of the city government" (Chicago Municipal Code § 2-56-030 (added Oct. 4, 1989)). 409 Ill. App. 3d at 965. The court discounted the idea that the Inspector General should have put the decision of whether special counsel should be retained in the hands of the Corporation Counsel, holding that such a procedure would "frustrate the independent investigative duties" of the Inspector General's office (409 Ill. App. 3d at 965) and "would be exalting form over substance" where, as here, "such a clear conflict of interest" is present (409 Ill. App. 3d at 966).

¶ 16    After concluding that the Inspector General was authorized to retain private counsel to initiate this challenge to the Corporation Counsel's decision to redact certain of the documents, the appellate court majority addressed whether the Corporation Counsel's claim of attorney-client privilege was meritorious. The court held that, as a general matter, the attorney-client privilege is available to municipal corporations. It noted, however, that the burden of establishing whether the privilege applies in a particular case is on the party seeking to shield the documents. The appellate court could find no evidence in the record that the Corporation Counsel had made such a showing here, and it concluded that there was insufficient information in the record concerning the documents in question to permit review of the trial court's determination that the documents were protected by the privilege. It therefore held that the appropriate course was to remand to the trial court "for the limited purpose of conducting an *in camera* inspection of the unredacted documents" and making appropriate factual findings. 409 Ill. App. 3d at 966-67.

¶ 17    The dissenting justice rejected the majority's conclusion that the authority to retain private counsel to bring suit against the Corporation Counsel was conferred on the Inspector General by implication under the ordinance establishing the Inspector General's office and defining its responsibilities. In the dissenter's view, the power to determine whether judicial proceedings should be brought to enforce a subpoena is vested by the Chicago Municipal Code in the mayor of the City, not the Inspector General. Indeed, the dissenter opined that the Inspector General has no legal existence independent of the City and is therefore not even "a legal entity capable of bringing suit." 409 Ill. App. 3d at 968 (Cahill, J., dissenting). The dissenter would have affirmed dismissal of the action on that basis. *Id.*

¶ 18    The Corporation Counsel petitioned this court for leave to appeal (Ill. S. Ct. R. 315 (eff.

Feb. 26, 2010)), arguing, as it did in the appellate court, that the dispute is nonjusticiable and that the circuit court therefore lacked subject matter jurisdiction to consider the Inspector General's claims. The Corporation Counsel further contended that the appellate court's judgment's recognizing the right of the Inspector General to retain counsel and file suit conflicts with the system adopted by the City in its municipal code and impermissibly abridges the power conferred on the Corporation Counsel by that code to manage the City's legal affairs.

¶ 19 We allowed the Corporation Counsel's petition. Once the matter was accepted for review and the Corporation Counsel filed his brief, the Inspector General sought cross relief. See Ill. S. Ct. R. 315(h) (eff. Feb. 26, 2010). He argues that we should reverse that portion of the appellate court judgment which remands for an *in camera* review of the redacted documents. In the Inspector General's view, further review of the documents by the circuit court is unnecessary because, as a matter of law, the Corporation Counsel is not entitled to invoke attorney-client privilege.

¶ 20                                              ANALYSIS

¶ 21 We begin our review with the question of whether the dispute between the Inspector General and the Corporation Counsel presented a justiciable controversy subject to resolution by the circuit court. The reason we must begin there is that the existence of a "justiciable matter" is a prerequisite to the circuit court's subject matter jurisdiction under article VI, section 9, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 9). *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002); *In re M.W.*, 232 Ill. 2d 408, 426 (2009). Absent a justiciable matter, the circuit court had no authority to proceed.

¶ 22 Whether a cause of action should be dismissed based on a lack of justiciability presents a question of law, which we review *de novo. Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). The constitution itself does not define the term "justiciable matters," nor did our former constitution, where the term first appeared (see Ill. Const. 1970, art. VI, § 9; Ill. Const. 1870, art. VI (amended 1964), § 9). Instead, courts are left to define the term on a case-by-case basis. *In re Estate of Burgeson*, 125 Ill. 2d 477, 485 (1988).

¶ 23 The courts have held that justiciability encompasses a range of concepts, "such as advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d at 488; *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 230 (2004). The overarching purpose of the doctrine is to reserve the exercise of judicial authority for situations where an actual controversy exists. "Actual" in this context

> "does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which

-7-

will aid in the termination of the controversy or some part thereof. [Citations.]" (Internal quotation marks omitted.) *National Marine, Inc. v. Illinois Environmental Protection Agency*, 159 Ill. 2d 381, 390 (1994).

See also *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d at 335.

¶ 24    The controversy before us meets this test. There is nothing hypothetical or abstract about it. The Inspector General issued a subpoena as authorized by the Municipal Code in furtherance of an investigation it had the power to undertake, the Corporation Counsel objected to the subpoena and refused to comply with it for reasons the Inspector General believes are not supported by law, and the dispute between the two departments would be deadlocked absent a judicial determination as to what, if any, legal recourse the Inspector General now has.

¶ 25    We find no merit to the Corporation Counsel's suggestion that justiciability should be found lacking on the grounds that the courts of Illinois have no authority to intervene in what is essentially an "intra-agency" dispute. The Corporation Counsel is correct that the appellate court should not have relied on *Burnette v. Stroger*, 389 Ill. App. 3d 321 (2009), *Read v. Sheahan*, 359 Ill. App. 3d 89 (2005), and *Sampson v. Graves*, 304 Ill. App. 3d 961 (1999), in rejecting his justiciability argument. See 409 Ill. App. 3d at 960-61. Neither *Read* nor *Sampson* contains any discussion at all of justiciability or anything else touching on the power of the judicial branch to consider and resolve disputes between different branches or departments of local government, and in *Burnette*, the issue was not the court's power to hear and decide the controversy, but whether the plaintiff had capacity to bring suit and standing to litigate the particular matter at issue.

¶ 26    That said, the Corporation Counsel's arguments regarding the power of the courts to resolve this controversy must nevertheless fail. Ultimately, resolution of this case turns on a construction of the provisions of the Chicago Municipal Code regulating the respective authority of the Inspector General, the Corporation Counsel and the mayor. The construction of statutes and ordinances is a quintessential judicial power. That power is vested in the courts (*Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 211 ( 2006); Ill. Const. 1970, art. VI, § 1). Nothing in the Illinois Constitution prohibits the exercise of that power merely because the provisions under review pertain to the powers conferred on municipal officials by local ordinance, and no claim has been made that undertaking the review necessary for resolution of this case will improperly involve the courts in a political question (see *Kluk v. Lang*, 125 Ill. 2d 306, 322 (1988); *Moore v. Grafton Township Board of Trustees*, 2011 IL App (2d) 110499, ¶¶ 5-8) or otherwise trigger separation of powers concerns under article II, section 1, of the Illinois Constitution (Ill. Const. 1970, art. II, § 1).

¶ 27    We also reject any notion that the Inspector General lacked standing to contest the Corporation Counsel's refusal to provide unredacted copies of the subject documents. The doctrine of standing is designed to preclude persons who have no interest in a dispute from bringing suit (*Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004)) and requires a person seeking to invoke the jurisdiction of the court to have some real interest in the cause of action or a legal or equitable right, title or interest in the subject matter of the controversy (*Hines v. Turley*, 246 Ill. App. 3d 405, 416-17 (1993)). The Inspector General

clearly has a real interest in the matter at issue here. The subpoena in question was issued by him pursuant to his authority under the Chicago Municipal Code, and his ability to seek enforcement of the subpoena in light of the Corporation Counsel's objections will have a direct and significant impact on how he undertakes his investigatory responsibilities under the law.

¶ 28    Having cleared these hurdles, we next consider whether the Inspector General was authorized to take action in response to the Corporation Counsel's refusal to comply with its lawfully issued subpoenas. The answer, again, is yes. As indicated earlier in this opinion, section 2-56-040 of the Municipal Code provides, in part, that "[f]or seven days after receipt of a timely objection to a subpoena, the inspector general shall take no action to enforce the subpoena or to initiate prosecution of the person to whom the subpoena is directed." Chicago Municipal Code § 2-56-040 (added Oct. 4, 1989). If the Inspector General is required to temporarily refrain from action when an objection has been filed, it necessarily follows that once the requisite seven-day period has elapsed without resolution of the objections and compliance with the subpoenas, action by the Inspector General to enforce the subpoena or to initiate prosecution of the person to whom the subpoena is directed is permitted. If that were not so—if the City Council did not intend to confer such authority on the Inspector General—the seven-day waiting period would serve no purpose. Because we must construe a statute, if possible, so that no part of it is rendered meaningless or superfluous (*Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 77), and because we use the same rules of construction when interpreting municipal ordinances as we do when construing statutes (*Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009)), we therefore conclude that the Inspector General has, indeed, been granted authority to take "action to enforce subpoenas or to initiate prosecution of the person to whom the subpoena was directed" where, as in this case, the requisite time period has passed without resolution of the objections.

¶ 29    This brings us to the central and dispositive issue in the case: whether the authority conferred on the Inspector General to take "action to enforce subpoenas or to initiate prosecution of the person to whom the subpoena was directed" includes the power to unilaterally retain counsel of his own choosing to initiate enforcement proceedings or prosecutions in circuit court in his own name. Contrary to the view taken by the appellate court majority, we hold that it does not.

¶ 30    The office of the Inspector General is not, itself, a unit of local government under Illinois law. See Ill. Const. 1970, art. VII, § 1. It is merely a department of the municipal government of the City of Chicago. It was established by municipal ordinance (Chicago Municipal Code § 2-56-010 *et seq.* (added Oct. 4, 1989)), not state statute, and has no legal status separate and apart from the City. See *Dr. Martin Luther King, Jr. Movement Inc. v. City of Chicago*, 435 F. Supp. 1289, 1294 (N.D. Ill. 1977) (applying Illinois law to hold that Chicago department of streets and sanitation "is merely an organizational division of the City and does not enjoy independent legal existence"); *Jordan v. City of Chicago, Department of Police*, 505 F. Supp. 1, 4 (N.D. Ill. 1980) (Chicago police department merely a department of the City which does not have separate legal existence); *Stevanovic v. City of Chicago*, 385 Ill. App. 3d 630, 631 (2008) (noting dismissal of Chicago fire department as a defendant in

a negligence action against the City on the grounds that the department itself was not a legal entity separate from the City).

¶ 31    The scope of the Inspector General's power and responsibility was defined by the Chicago city council in chapter 2-56 of the City's Municipal Code (Chicago Municipal Code § 2-56-010 *et seq.* (added Oct. 4, 1989)), which we have quoted extensively in this opinion. Nothing in chapter 2-56 confers on the Inspector General the authority to file proceedings in circuit court to enforce any of the ordinances pertaining to his responsibilities under the Chicago Municipal Code or to retain private counsel to do so on his behalf.

¶ 32    By law, the power to file such proceedings belongs, instead, to the Corporation Counsel. Section 21-11 of the Illinois Municipal Code expressly provides that the corporation counsel "shall appear for and protect the rights and interests of the city in *all* actions, suits, and proceedings brought by or against it *or any city officer, board or department*." (Emphases added.) 65 ILCS 20/21-11 (West 2010). Section 2-60-020 of the Chicago Municipal Code (Chicago Municipal Code § 2-60-020 (amended Sept. 5, 2007)) likewise states that the Corporation Counsel is charged with responsibility for "conduct[ing] all the law business of the city" (Chicago Municipal Code § 2-60-020(a) (amended Sept. 5, 2007)) and "shall *** [a]ppear for and protect the rights and interests of the city in all actions, suits and proceedings brought by or against it or any city officer, board or department" (Chicago Municipal Code § 2-60-020(b) (amended Sept. 5, 2007)). "Shall," when used in the Chicago Municipal Code, means that something is mandatory unless the Code "explicitly" provides otherwise, which it does not do in this context. Chicago Municipal Code § 1-4-100 (amended May 9, 2012).

¶ 33    The Inspector General's claim to possess the authority to litigate matters arising under the Chicago Municipal Code cannot be squared with the plain and unambiguous language of the foregoing provisions. Given the clear language of the provisions, and reading them together, as we must, we agree with the dissenting justice below that the Inspector General, acting as he was solely in his official capacity as an officer of the City of Chicago, had no right to retain private counsel to initiate proceedings in circuit court in furtherance of an official investigation undertaken by his department. We could not hold otherwise without reading into the Chicago Municipal Code both a grant of power to the Inspector General which the city council did not confer and a limitation on the power of the Corporation Counsel which the city council did not authorize. That, of course, would be impermissible. *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2006) (court must enforce statute as written and may not annex new provisions or substitute different ones, or read into the statute exceptions, limitations, or conditions which the legislature did not express). In reaching this conclusion, we express no view on whether the Chicago city council could delegate limited litigation authority to the Inspector General if it chose to do so. We hold only that it has not done so yet. Under the law as it presently exists, filing suit on behalf of the City, its officers and departments is the responsibility of the Corporation Counsel. In the normal course of events, the Inspector General must therefore look to the Corporation Counsel when judicial enforcement of a subpoena is necessary.

¶ 34    Of course, asking the Corporation Counsel for legal representation to enforce a subpoena is problematic where, as in the unusual situation before us here, the Corporation Counsel, in

his official capacity, is the very person who was subpoenaed. These circumstances present an obvious conflict of interest within the meaning of Rule 1.7(a) of the Rules of Professional Conduct (Ill. R. Prof. Conduct (2010) R. 1.7(a) (eff. Jan. 1, 2010)), a provision which is binding on lawyers such as the Corporation Counsel who serve as public officers (Ill. R. Prof. Conduct (2010) R. 1.11(d) (eff. Jan. 1, 2010)). Because the conflict is so patent, we do not believe it was necessary for the Inspector General to request representation from the Corporation Counsel before taking further action in the wake of the Corporation Counsel's refusal to fully comply with the subpoena. At the same time, however, the existence of the conflict did not confer on the Inspector General any right to go beyond his specified authority under the Chicago Municipal Code and unilaterally decide to hire his own lawyers to bring suit.

¶ 35    In approving the Inspector General's unilateral action, the appellate court opined that he had "followed proper procedures for the appointment of special counsel." 409 Ill. App. 3d at 965-66. But that is not so. Illinois law contains various provisions governing the procedure for appointment of special counsel to represent a governmental agency or official in a particular matter where the statutorily designated attorney cannot act. See 55 ILCS 5/3-9008 (West 2010) (permitting appointment of attorney to represent county where State's Attorney is "sick or absent, or unable to attend, or is interested in any cause or proceeding"); 15 ILCS 205/6 (West 2010) (same with respect to appointment of attorney to act in situations where the duty to prosecute or defend belongs to State Attorney General); 5 ILCS 430/20-45(b) (West 2010) (same where Attorney General cannot represent Executive Inspector General before Executive Ethics Commission). None of those statutes applies to the Corporation Counsel for the City of Chicago. Moreover, even in situations where the foregoing statutes do apply, they require judicial review and approval of the appointment request. No such approval was requested or granted in this case before the Inspector General filed suit. That was not an oversight. In the circuit court, one of the Inspector General's private lawyers argued that because there is no statute analogous to the ones cited above for appointment of special counsel at the municipal level, he "was not sure any court appointment of counsel is necessary" in this case.

¶ 36    Throughout these proceedings, the Inspector General has asserted that his decision to unilaterally retain private counsel to represent him in his official capacity is supported by the appellate court's decision in *Suburban Cook County Regional Office of Education v. Cook County Board*, 282 Ill. App. 3d 560 (1996). Although the appellate court found this authority helpful, there are basic differences between this case and that one, which dealt, in relevant part, with whether the Attorney General was obligated to provide representation to a regional superintendent of education when the State's Attorney refused to do so. There is no need to elaborate on the differences between the two cases. For purposes of this discussion, it is sufficient to note an aspect of *Suburban Cook County Regional Office of Education* which the appellate court apparently overlooked. In the course of its discussion, the court in *Suburban Cook County Regional Office of Education* specifically held that the regional superintendent did "*not* have the right to unilaterally select a private attorney to represent him in his official capacity." (Emphasis added.) *Id.* at 570. That, of course, is precisely what the

Inspector General did here, and it is likewise impermissible.[3]

¶ 37    Although the Chicago city council has elected not to adopt a mechanism for judicial appointment of special counsel where the Corporation Counsel cannot undertake representation because of a conflict of interest, the city council has not left the Inspector General without recourse in cases such as this one. Under the Chicago Municipal Code, all municipal officers, including the Corporation Counsel, are subject to the supervision of the mayor (Chicago Municipal Code § 2-4-020 (added Oct. 4, 1989)), and the Inspector General has the power and duty to report the results of his investigations to the mayor (Chicago Municipal Code § 2-56-030(d) (added Oct. 4, 1989)). As the City's chief executive officer, the mayor, in turn, has ultimate responsibility for enforcement of the City's ordinances (Chicago Municipal Code § 2-4-030), and is authorized by law to impose punishment on subordinate municipal officers who are exempt from the provisions of the civil service act where those officers have violated their duties or committed other offenses. Chicago Municipal Code § 2-4-020. In this case, the impasse over the Inspector General's subpoena directly implicates the duties of cooperation and disclosure imposed on the Corporation Counsel and all other municipal officers by section 2-56-090 of the Chicago Municipal Code (Chicago Municipal Code § 2-56-090 (added Oct. 4, 1989)) and the mayor's Executive Order No. 2005-2, both of which we quoted earlier in this opinion. Under the system adopted by the Chicago city council, and as the dissenting appellate court justice in this case correctly recognized (409 Ill. App. 3d at 967 (Cahill, J., dissenting)), the matter is therefore one which was within the power of the mayor to resolve. Accordingly, because the Corporation Counsel's conflict precluded further action by him on behalf of the Inspector General, the Inspector General should have looked to the mayor for assistance.

¶ 38    The Inspector General laments that this outcome will leave him with less power than he needs to properly undertake the investigatory functions with which he has been entrusted. In most instances, however, the Inspector General's investigations should not be hampered at all by the problem presented by this case. The difficulty arose here only because of the highly unusual circumstance that the subpoena was directed to the Corporation Counsel himself. In any event, whether or not the Inspector General feels he has the power he needs under the law, the fact remains that this is all the power the Chicago city council has chosen to give him. We cannot give him more. If there are practical deficiencies in the system adopted by the City to help police the operations of its various departments and the conduct of its employees, that is a matter for the City, not this court, to remedy.

¶ 39    In sum, because the Inspector General should have directed this dispute to the mayor and had no authority under the law to unilaterally retain private counsel to file these proceedings

---

[3]We also caution that, depending on the circumstances, the misapprehension that a government official may act unilaterally and without prior court approval to retain private counsel to handle official business on his or her behalf in place of statutorily designated counsel may have perilous consequences for the official in question. If the official subsequently accepts public monies to pay the privately retained attorney, charges of official misconduct may result. See *People v. Wilkinson*, 285 Ill. App. 3d 727, 735 (1996). Because the attorneys retained by the Inspector General are representing him at no charge, that is not a concern here.

in circuit court, the circuit court acted properly when it dismissed the Inspector General's cause of action with prejudice. We affirm its judgment on that basis and reverse the judgment of the appellate court.

¶ 40        As noted at the outset of this disposition, the circuit court held, in the alternative, that the Inspector General's claim would fail on the merits because the documents he is seeking are protected by attorney-client privilege. Because the Inspector General was not authorized to retain private counsel to bring this action and the action therefore should not have been in court to begin with, resolution of the underlying merits was not necessary to the disposition. The portions of the circuit and appellate court judgments addressing applicability of attorney-client privilege are therefore vacated.

¶ 41                                CONCLUSION

¶ 42        For the foregoing reasons, the judgment of the appellate court is reversed in part and vacated in part. The judgment of the circuit court is affirmed in part and vacated in part.

¶ 43        Appellate court judgment reversed in part and vacated in part.

¶ 44        Circuit court judgment affirmed in part and vacated in part.